### NATIONAL LABOR RELATIONS BOARD v. HARRIS–WOODSON CO., Inc.

No. 6017.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 9, 1950.

Decided Jan. 30, 1950.

Bernard Dunau, Attorney, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, and Melvin Pollack, Attorney, National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

William F. Howe, Washington, D. C. (Gall & Lane, Washington, D. C., on the brief), for respondent.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and WARLICK, District Judge.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board directing the Harris-Woodson Company to cease and desist from unfair labor practices, to reinstate certain employees and to bargain with a local union affiliated with the TWUA, as the bargaining representative of employees. This is the second time that the labor troubles of this company have been before the court. On May 31, 1947, we entered a decree enforcing an order of the Board, dated August 26, 1946, which found the company guilty of unfair labor practices including the refusal to bargain with the local union representing its employees and directed that it cease and desist from such practices and bargain with the union See N. L. R. B. v. Harris-Woodson Co., 4 Cir., 162 F.2d 97, 99. The facts as found by the Board in that case relating to the refusal to bargain are pertinent here. They are set forth in our former opinion enforcing the Board's former order as follows:

"As to the refusal to bargain, the company admits that since September 1, 1943, it has refused to bargain with the union, and the record amply supports the finding of the Board, that the refusal was not justified. The facts are that following the organization of the union in August 1942, it was unanimously chosen as the bargaining representative of the employees at an election held shortly thereafter. The company recognized it as bargaining representative, but upon the failure of negotiations a strike was called which lasted for several weeks. The strike was settled by the negotiation of a trade agreement which was to be operative until October 1, 1943, and which fixed wages until that date but reserved certain questions including the check off and the closed shop for further negotiation. These were taken up in June, July and August, without any agreement being reached, and at the August meeting it was agreed that further negotiations would be suspended until a meeting in September, when a new contract would be discussed. No further meetings were ever held, however, because, beginning September 1st, the Company expressed doubt that the union represented a majority of its employees, addressed communications to the employees stating that they need not join a union and would save money by not paying union dues and notified the union that it would not be further recognized as bargaining agent for the employees unless so designated in a new election to be held by the Labor Board. No such election was held and the company has since refused to recognize the union as bargaining agent.

"The evidence sustains the finding of the Board that the union had not lost its majority representation when the company refused to bargain with it in September 1943. The records of the union show that during August 1943 it had 27 paid up members, in September 38 members, and in October 37 members. The president of the company had the foreman make inquiry of the employees and only eight or ten were reported as having indicated a preference to deal directly with the company. No rival union was claiming to represent the employees, and the record sustains the view that the president of the company was merely seeking another election in the hope that he might be able to persuade a majority of the employees to repudiate the bargaining agent which they had elected, and which had been certified as such by the Board. It is not without significance that he refused to agree to an election to be conducted by representative persons in the community such as members of the faculty of the local college, any minister of the Gospel or the judge of any court of record. The refusal to bargain continued until complaint was filed with the Board in the spring of 1945, and there is nothing to show that in the meantime the union did not represent a majority of the employees. On the contrary, there is evidence that its majority status continued."

Following the entry of the Board's order the local union representing the company's employees called on the company to bargain but it refused to do so, notwithstanding the Board's order and the clear finding therein that the union was properly qualified as the bargaining representative of the employees. The evidence shows that at that time all but one of the company's production workers then employed within the appropriate

unit were paid up members of the union. Because of this refusal to bargain the employees went on strike, whereupon the company took the position that they had quit their jobs and refused to reinstate all except a very few of them when the strike was called off. The Board found that the strike was caused by the company's unfair labor practice in refusing to bargain and held that because of this the striking employees were entitled to reinstatement. The finding of the Board is as follows: "In agreement with the Trial Examiner, we find (a) that the union actually represented a numerical majority of the respondent's employees in the appropriate unit in September 1946, and thereafter; (b) that the respondent refused to bargain collectively with the union on and after September 23, 1946, in that, on that date, the respondent rejected the union's request of September 11, 1946, for bargaining and notified the union by letter that the respondent would not recognize the union and thereafter persisted in its refusal to deal with the union; and (c) that the strike which ensued was caused by such unfair labor practices. Alternatively, we find (a) that the respondent refused to bargain collectively with the union on and after September 1, 1943, as the Board determined in its prior decision: (b) that, apart from the fact that the union represented a new numerical majority of the employees in the appropriate unit in September 1946, and thereafter, the union continued, as a matter of law, to be the exclusive representative of such employees from August 26, 1946, the date of the Board's prior decision and order, to the date of the strike and thereafter, in view of the unremedied refusal to bargain; (c) that the respondent continued to refuse to bargain with the union from August 26, 1946, to the date of the strike; and (d) that the strike was caused by such continuing refusal to bargain."

The local union representing the employees when the first order of the Board was entered was United Candy Workers Local Industrial Union No.1274, a local of the CIO. This local union continued to represent the employees and was representing them when the Board entered its order of May 24, 1948, which, with the amendment hereafter mentioned, is the order we are asked to enforce. At the time of the entry of this order, the CIO had not complied with section 9 (f) (g) and (h) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 159 (f) (g) (h); and the Board conditioned that portion of its order directing the employer to bargain upon the union's compliance with the requirements of the statute within a period of 30 days. The CIO did not comply and the local union surrendered its CIO charter and became affiliated with the Textile Workers Union of America (TWUA), which was in compliance. It changed its name, upon this change of affiliation, to United Candy Workers of Lynchburg affiliated with Textile Workers Union of America, CIO. There is no question but that this transfer of allegiance by the local union had the approval of its members, who constituted a majority of the employees in the bargaining unit. The Board, on September 12, 1949, after proper notice and hearing, amended its original order of May 24, 1948 to so find and to substitute the new name of the local in describing the bargaining agent with which the company was required to bargain. In this connection the Board said: "In the present case, despite the change in name and affiliation and the resulting consequences, we find that continuity of organization has been preserved, in view of the fact that the great bulk of the membership of United is the same as that of Local 1274 and the further fact that the officers of United are the same as those of Local 1274. We concluded therefore that United Candy Workers of Lynchburg, affiliated with the Textile Workers Union of America, C. I. O., is, for purposes of our original bargaining order, the same labor organization as United Candy Workers Local Industrial Union No. 1274, affiliated with the Congress of Industrial Organizations. We shall therefore substitute the name 'United Candy Workers of Lynchburg, affiliated with the Textile Workers Union of America, C. I. O.,' for the name 'United Candy Workers Local Industrial Union No. 1274, affiliated with the Congress of Industrial

Organizations,' in our Order dated May 24, 1948."

Two questions are raised by the company in opposition to the enforcement of the order: (1) whether an unfair labor practice may be predicated of the company's refusal to bargain with the local union following the entry of the Board's order in 1946, and (2) whether it was proper to direct the company to bargain with the local union after its change of affiliation. We think that both questions should be answered in the affirmative.

■ On the first question, it is perfectly clear, as found by the Board, that the company refused to bargain with the local union following the first Board order, when the union represented a majority of employees in the bargaining unit and when that fact had just been determined by the Board. It seems clear, also, that the refusal was based, not on any bona fide doubt that the local union represented a majority of the employees, but, as we pointed out in our former opinion, on the hope that, if another election were ordered, they might be persuaded "to repudiate the bargaining agent which they had elected, and which had been certified as such by the Board." Under such circumstances there can be no doubt that the refusal to bargain constituted an unfair labor practice. We so held in our former opinion; and it is manifest that the continuing refusal to bargain was not purged of its illegality because of the entry of an unfair practice order by the Board. The argument that the Board's order does not enforce itself but must be enforced by a decree of the Court of Appeals is beside the point. Refusal to bargain is made an unfair labor practice by the statute, not by the Board's order. See 29 U.S.C.A. § 158 (a) (5).

■ It is true, of course, that an employer is not required to bargain with a union upon its mere request without satisfactory proof of majority representation; but such proof existed here, not only in the facts to which attention was called in our prior opinion, but also in the certification by the Board and the findings made in connection with the prior order. That order

called attention also to the well settled law that, under the circumstances of the case, the company was not absolved of its obligation to recognize the union as bargaining agent even if there had been a loss of majority. N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640; Great Southern Trucking Co. v. N.L.R.B., 4 Cir., 139 F.2d 984, 986. The contention that the company was in doubt as to the union's representing a majority of employees is little short of absurd in view of the fact that practically all of the employees went out on strike in an attempt to compel the company to bargain with the union. N. L. R. B. v. National Seal Corp., 2 Cir., 127 F.2d 776, 777.

■ There is as little substance in the second question raised. It was the local union which the employees chose as their bargaining representative; and the fact that they desired it to represent them in collective bargaining was not affected by its change either of name or affiliation. On the contrary, it is perfectly clear that the only purpose of these changes was that it might be enabled thereby to bargain in behalf of the employees. Metaphysical arguments as to the nature of the entity with which we are dealing should not be permitted to obscure the substance of what has been done or to furnish a smoke screen behind which the company may with impunity defy the requirements of the statute that it bargain with the representative that its employees have chosen. The identity of that representative, composed entirely of the company's employees, was not changed either by its change of name or its change of affiliation. See Continental Oil Co. v. N. L. R. B., 10 Cir., 113 F.2d 473, 477.

It appears from the record here and that in the former case that for more than six years this company has refused to bargain with the chosen representative of its employees notwithstanding the requirement of the statute and notwithstanding two orders of the Board and a decree of this Court directing it to do so. The time has come for it to comply with the law without further delay or sophistry. The order of the Board will be enforced.

Order enforced.