CARPINTERIA LEMON ASSOCIATION, a corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CARPINTERIA LEMON ASSOCIATION, a corporation, Respondent.

SEABOARD LEMON ASSOCIATION, a corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SEABOARD LEMON ASSOCIATION, a corporation, Respondent.

OXNARD CITRUS ASSOCIATION et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

OXNARD CITRUS ASSOCIATION et al., Respondents.

SOMIS LEMON ASSOCIATION, a corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SOMIS LEMON ASSOCIATION, a
corporation, Respondent.

SANTA CLARA LEMON ASSOCIA-
TION, a corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SANTA CLARA LEMON ASSOCIA-
TION, a corporation, Respondent.

Nos. 14823, 14824, 14838–14840.

United States Court of Appeals
Ninth Circuit.

Dec. 11, 1956.

Rehearing Denied Feb. 7, 1957.

Ivan G. McDaniel, Kenneth N. Della-mater, Leon ·L. Gordon, Los Angeles, Cal., for petitioners.

Theophil C. Kammholz, Gen. Counsel, N. L. R.. B., David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Duane Beeson, Attys., N. L. R. B., Washington, D. C., for respondent.

Before , HEALY and FEE, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

These five cases involve orders issued by the National Labor Relations Board against five associations of citrus fruit growers operating in the vicinity of Oxnard, California. In each case, the Board asks that we enforce its order and the association asks that we set it aside.

The facts and issues, with minor exceptions, are basically similar in all five cases. Each association was formed to process and pack citrus fruit grown by its members. In November, 1953, as the result of Board-conducted elections held pursuant to consent agreements, the United Fresh Fruit and Vegetable Growers, Local Industrial Union No. 78, CIO, was chosen the bargaining agent for the employees in each association and was certified as such by the Board. Shortly thereafter, the union began negotiations with each association for a collective bargaining contract.

Early in 1954, the associations refused to negotiate further with the union on the ground that they had received petitions from their employees repudiating the union as their bargaining agent. In each case the petition requested the association to deal with an employee committee and not with the union. However, even prior thereto, negotiations had not been fruitful. In fact, negotiations had already been broken off by two of the associations because of disagreement with the union on the issue of union security. The union then filed unfair labor charges against the associations alleging, among other things, their refusal to bargain.

At the time the charges were filed, the Fruit and Vegetable Union was chartered as a local union by the national CIO. In the spring of 1954, the national CIO proposed to the membership of the Fruit and Vegetable Union that they change its status from a local union chartered by the national CIO to a local union chartered by the United Packinghouse Workers of America, a CIO affiliate.

A number of membership meetings were held in the area served by the union in California and Arizona. At the meeting held in the Oxnard area, approximately 150 members from these five associations voted unanimously in favor of the proposal. As a result of these meetings, the union dropped its direct connection with the CIO and became affiliated through the Packinghouse Workers. It surrendered its CIO charter and received a Packinghouse Workers charter, taking on the status and name of a Packinghouse Workers local.

The expiring union and the successor union then joined in requesting the Regional Director of the Board to change the certifications previously issued to reflect the new designation of the union. The Director granted the motion and amended the certificates accordingly.

Hearings on the unfair practice charges were held and the Board thereafter ordered the associations to bargain with the Packinghouse local. The associations contend that this ruling is unlawful because the Packinghouse local is a new and different union from the Fruit and Vegetable Union originally chosen as bargaining agent.

■ The right of a successor union to assume the status of certified bargaining agent held by its predecessor depends on a factual issue—is the new union a continuation of the old union under a new name or affiliation or is it a substantially different organization? National Labor Relations Board v. Harris-Woodson Co., 4 Cir., 179 F.2d 720; Continental Oil Co. v. National Labor Relations Board, 10 Cir., 113 F.2d 473.

This factual issue was contested before the Trial Examiner who heard the charges against the associations. Although the Packinghouse Workers sent in a new financial administrator to replace the one previously furnished by the national CIO, the officers remained the same. There was no dilution of membership as a result of the change. Contracts concluded by the Fruit and Vegetable Union remained in effect except for the substitution of the union's new name. This testimony was not contradicted.

■■ The Board adopted the Trial Examiner's finding that there was merely a change of name and affiliation. From our consideration of the record as a whole, we find that this determination is supported by substantial evidence. We are precluded by law from reexamining any Board finding of fact in an unfair labor practice case which is so supported. National Labor Relations Act, § 10(e), 29 U.S.C.A. § 160(e); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Each association objects to the Board's order that it bargain with the union on the additional ground that it was relieved of this duty when a majority of its employees repudiated the union.

Some years ago the Board set up a working rule that in the absence of "unusual circumstances" an employer is required to bargain with the certified union for one year even though the union is repudiated within the year by a majority of the employees in the bargaining unit. This rule was adopted to give the elected union a fair chance to bargain and to minimize obstructionist tactics by employers. In the present cases the repudiations occurred within two to five months after the certifications, and the Board applied the one-year rule.

■ The same argument here advanced by the associations was considered and rejected in Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125. The Court there decided that the one-year rule was within the power of the Board to make and its application was a matter within the Board's discretion. We find that the Board in these cases did not abuse that discretion.

■■ The associations next contend that the Board erred in finding that they were guilty of unfair labor practices by granting wage increases without consulting with the certified bargaining agent. Such unilateral increases violate an employer's duty to bargain with the certified union. May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145. The associations assert that this rule is not applicable to these cases because the union had already been repudiated by a majority of the employees in each plant. In view of our earlier conclusion that the repudiation petitions did not remove the associations' duty to bargain with the union, it follows that they were not justified in granting the wage increases without consulting with the union.

The Somis and Oxnard Associations contend that they were justified in granting unilateral wage increases on the additional ground that their negotiations had actually broken down. They assert that the resulting impass freed them from any duty to bargain with the union over wages.

After certification of the Fruit and Vegetable Union in November, 1953, Somis and Oxnard met with the union for collective bargaining. The discussions dealt primarily with union security. The union demanded a union shop and the associations insisted upon an open shop. When it became apparent that an agreement would not be reached on this issue, each association announced that further discussions would be useless and terminated the negotiations. They refused to resume negotiations even though the union offered to continue negotiations in other areas, such as wages, which had not yet been discussed. Written requests by the union failed to bring about a resumption of negotiations in spite of the fact that the union offered to consider compromising on its union shop demand if an otherwise satisfactory agreement could be reached.

■ The Board found that no impasse had arisen. The evidence strongly suggests that the associations deliberately selected the most controversial issue on which to commence negotiations in order to create a deadlock and break off negotiations. Viewing the record as a whole, we find that the Board's finding is supported by substantial evidence.

The Santa Clara case raises two additional issues. Santa Clara contends that there is insufficient evidence to sustain the Board's findings:

(1) that it discriminated against Jewell Luttrell in her job assignments because of her union activities; and

(2) that it threatened its employees with loss of earnings, promotion and employment because of their interest in the union.

Mrs. Luttrell was a leader in the drive to unionize Santa Clara. She became chief shop steward after the union was certified as bargaining agent. During the period preceding the drive, she was employed on the fruit washer except for slack times when she worked on the fruit grader. In September, 1953, two months before the election, the practice of assigning her to the grader stopped, and she suffered loss of pay during the periods in which the washer did not operate.

The coercion-by-threat charge contains both general and specific allegations. It charges that Roger Sayre, the association's foreman, threatened to fire an employee if he continued to support the union and that he also threatened to fire all union adherents. It charges that at various times he told one or more employees that they would not be promoted unless they stopped working for the union, and that if it were not for the union, they would earn more money and would work full time instead of part time.

■ Mr. Sayre contradicted Mrs. Luttrell's testimony that she suffered discrimination because of her union activities, and he denied that he had made any of the coercive statements which various witnesses attributed to him. From the record as a whole, including the Trial Examiner's comments on the personal impressions made by the witnesses, we conclude that there is substantial evidence to support the Board's findings with respect to Mrs. Luttrell's job assignments and the association's coercive statements.

■ There is no merit in Santa Clara's contention that the variances in dates between the allegations and the proof, which range from five days to ten weeks, are fatal to the findings as a matter of law. M. H. Ritzwoller Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 432.

All objections of the associations having been examined and found wanting, the orders of the Board will be enforced.

Orders enforced.

JAMES ALGER FEE, Circuit Judge (dissenting).

The amendment of certification of election made by the Regional Director on *November 21, 1954,* naming the United Packinghouse Workers of America in place of United Fresh Fruit & Vegetable Workers, LIU, which was actually chosen and balloted for by the workers in the

plant on *November 4, 1953,* over a year earlier, is null and void. The clause in the consent election agreement gave no authority for this substitution without consent of the electors. The majority passes over this point in silence.

All of the negotiations and incidents related to the period when United Fresh Fruit & Vegetable Workers, LIU, was the certified agent. The employers objected to the entry on the scene of United Packinghouse Workers of America after their respective employees had protested against this substitution and after the national organization had cancelled the charter of United Fresh Fruit & Vegetable Workers, LIU, which was the certified bargaining unit after the election held more than a year previously. The device of conferring the same number 78 on the new unit cannot avail.

"The vote of the employees is the decisive factor in securing 'that freedom of choice which is the essence of collective bargaining.' * * * Here the men voted for the Blacksmiths and the result was duly certified. They did not vote for the Boilermakers. No second election was held after that certified February 2, 1953." Dickey v. National Labor Relations Board, 6 Cir., 217 F.2d 652, 655.

In the above cited case an amendment to certification was held void upon circumstances which afford no logical distinction. Here, if another election had been held, it is apparent United Packinghouse Workers of America local would not have been chosen as the bargaining agent.

The two unions are not identical.[1] The engagements of the previous local toward the workers employed by the various appellants and toward the employers are not binding on the present unit. M & M Wood Working Company v. National Labor Relations Board, 9 Cir., 101 F.2d 938.

We adopt the statement of the brief of Santa Clara Lemon Association as to the changes which prove conclusively that these two locals are entirely different entities and that the employees of the various packinghouses might well desire to be represented by a different group.

"The following summary of the pertinent facts and the law clearly illustrates a change of union without the employees' consent: (1) Petitioner consented to a Board election with the Fruit & Vegetable Union on the ballot; (2) a majority of the employees voted for the Fruit & Vegetable Union on November 4, 1953; and it was duly certified by the Board on November 13, 1953; (3) Petitioner did not consent to an election having the Meatpackers' International or the Meatpackers' Local on the ballot; (4) the employees did not vote for the Meatpackers' International or the Meatpackers' Local; (5) no second election was held after the November 4, 1953 election; (6) the employees in Petitioner's production unit had a basic statutory right to express their choice; (7) their choice was expressed in favor of the Fruit & Vegetable Union but not in favor

---

1. The opinion of the majority says, at page 3, that "the officers remained the same." Yet in the most recent of the hearings there is testimony, by the deputy administrator of the Packinghouse Local, to the effect that "under the administratorship you don't have no officers of a union." The record also shows that the President and Vice-President and Secretary-Treasurer of the Fruit & Vegetable Local, LIU, at the time of the last hearing, no longer retained their former offices under the Packinghouse Local. The ex-President is now stationed in Phoenix, Arizona, as a business agent of the present union. The former Vice-President has a broader territorial scope, but is now only a business agent of the Packinghouse Local. Helen Parker, previously Secretary-Treasurer of the Fruit & Vegetable Local, LIU, is now a secretary at Salinas. It is further reported: "Q. Does Local No. 78 of the Packing House Workers at the present time have an Executive Board? A. In an administratorship, I don't, well, you just don't have an Executive Board."

of the Meatpackers' International or the Meatpackers' Local; (8) the Meatpackers' International amalgamated with the Fruit & Vegetable Union, and in the process absorbed the latter; (9) in the amalgamation the charter and seals of the Fruit & Vegetable Union were cancelled, its office titles were set aside, its officers were removed; (10) following the merger the Meatpackers' International was in complete and exclusive control through Administrator Stephens and Deputy Administrator Simonson; (11) the Meatpackers' International chartered, set up and operated through its new Meatpackers' Local, which it maintained in an administratorship status; (12) the administrator of the Meatpackers' Local is Anthony T. Stephens, a vice-president of the Meatpackers' International; (13) Mr. Stephens operates from his offices in Chicago, Illinois where the home offices of the Meatpackers' International are located; (14) the deputy administrator of the Meatpackers' Local is Gilbert Simonson, who is an international representative of the Meatpackers' International; (15) Simonson's appointment as deputy administrator was made by the executive board of the Meatpackers' International, which is his employer; (16) Simonson works under the direction of Administrator Stephens; (17) Simonson's offices and those of the Meatpackers' Local are in Salinas, California; (18) the Meatpackers' International has 150,000 members as compared with 18,000 members in the Fruit & Vegetable Union; (19) the Fruit & Vegetable Union had complete control of the union for which the employees voted on November 4, 1953—they have no control of the amalgamated union, either International or Local; (20) the charges in the instant action were filed by the Fruit & Vegetable Union, and not by the Meatpackers' Union (Local or International).

"The employees in the instant case voted to bargain collectively through the Fruit & Vegetable Union. They have never voted to bargain through a union whose official representation gives control to an organization other than the Fruit & Vegetable Union. In the instant case, and in the absence of a second election, every detail of administration and control was arbitrarily taken over by the 150,000-member Meatpackers' International from the 18,000-member Fruit & Vegetable Union. The Fruit & Vegetable Union has disappeared as an entity. Deputy Administrator Simonson doesn't even know what offices or officers were in the Fruit & Vegetable Union.

"The new Meatpackers' Local controls neither administrative details, nor policy—such matters are under the exclusive control of the Meatpackers' International acting through Administrator Stephens and Deputy Administrator Simonson."

The proposition that the workers in each of these voted for representation by United Packinghouse Workers Local is negated by the following factors: (1) The charter of the former local was direct from National CIO, whereas the present has an entirely different charter as a local of Meatpackers' International. (2) The trusteeship of all the affairs of this local and of all its bargaining powers was apparently not possible under its former affiliation. (3) The assumption of dictatorial powers by the Administrator and the Deputy proves that the representation of the workers by the present unit is not legally or morally identical with the former local, which is now destroyed.

The sanction of the courts of such control of a local without consent thereto by local workers at a particular plant at

a Board supervised election is undemocratic and against the essential interests of the public at large.

The cause should be remanded for further consideration by the Board, which has machinery to work out a proper result.

