RETAIL, WHOLESALE AND DEPART-
MENT STORE UNION, AFL–CIO, LO-
CAL 28, an unincorporated association;
William A. Griffith and Clarence Feth-
erson, Plaintiffs,

v.

AMERICAN BAKERIES COMPANY,
a corporation, Defendant.

Civ. A. No. 2548.

United States District Court
W. D. North Carolina,
Charlotte Division.

Oct. 13, 1969.

Adam Stein and James E. Lanning, Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., for plaintiffs.

Ernest Machen, Blakeney, Alexander & Machen, Charlotte, N. C., for defendant.

## MEMORANDUM OPINION

McMILLAN, District Judge.

This case was heard, pursuant to notice, for three full days on October 6, 7 and 8, 1969, upon motion of the plaintiffs for a temporary restraining order as requested in the complaint.

The basis for relief alleged is breaches of the labor contracts between the defendant employer and the plaintiffs, who are Local 28 of the International Union and the officers and bargaining representatives of Local 28. The court is of the opinion that jurisdiction exists under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Retail Clerks Intern. Ass'n v. Lion Dry Goods, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962); Parks v. International Brotherhood of Elec. Workers, 314 F.2d 886 (4th Cir., 1963).

For purposes of this order, and from virtually uncontradicted evidence, the following facts are found:

The defendant operates a bakery, one of a chain, in Charlotte. It employs

about four hundred persons in the production department and about seventy or seventy-five in the sales department. Since 1956 the plant has been unionized. The bargaining agent certified by the National Labor Relations Board for production employees is the Retail, Wholesale and Department Store Union, AFL–CIO International (the International). The unit certified for the sales workers is Retail, Wholesale and Department Store Union, AFL–CIO, Local 28 (the Local). The National Labor Relations Board certification, however, does not control the issue.

A labor contract covering the production workers was first negotiated and executed in 1956. A labor contract covering the sales workers was first negotiated and executed three or four years later. From the very first contract William A. Griffith, one of the plaintiffs, has participated in the negotiations and since 1959 he has signed all contracts; and for ten years or so he has been president of Local 28 and chairman of the negotiating committee. Fetherson has been an officer and active in negotiations and a signer of contracts for at least six or seven years.

The plaintiffs Griffith and Fetherson are the duly elected and chosen officers of Local 28, a fact which has been known to the defendant at all times. Fetherson has been an employee of the defendant since 1950, is secretary-treasurer of the Local, and is presently employed in the sales department of the defendant.

The contract for the sales employees had a termination date of August 31, 1969, with a clause providing for its continuation in effect until cancelled by a specified notice by one of the parties. The contract, like previous contracts, was signed for the Union by Griffith and Fetherson and others of their committee. The agreements on their face were made by "Local 28" of the International.

The contract for production workers, still in effect, and similar in general nature, was also signed by Griffith and his Local 28 negotiating committee, and expires August 9, 1970.

At no time until the summer of 1969 had any question been raised in some thirteen years of contract and grievance procedures concerning the authority of Griffith and the other officers and the members of his negotiating committee to represent both the sales and production employees.

On June 27, 1969, Griffith wrote the employer requesting a conference to start negotiations for the new sales contract scheduled to expire August 31, 1969. He received no reply. Meanwhile, without notice to Griffith but under circumstances which Griffith heard of, and protested, the defendant received demands from representatives of the International, recognized those representatives as bargaining agents, and on July 28, 1969 met and started negotiations with the International for a new contract covering the sales personnel.

Griffith made another inquiry by letter on July 29; and on July 31 he called upon J. J. Brown, the plant manager, and Mr. Heiner, the overall director of personnel for American Bakeries Company, to seek an understanding with the employer about representation. Heiner and Brown took the position that the representatives of the International, and the new bargaining representatives who had been locally elected, ostensibly under the aegis of the International, were now the proper representatives of Local 28. Griffith advised the defendant's representatives that he and Fetherson and the other previously elected members of the negotiating committee for Local 28 were still the only authorized bargaining agents for the Union.

Griffith handed to Heiner a copy of the constitution of the International which contains clear provisions for the qualification and election of officers of Locals, and under which provisions Griffith and Fetherson were then and still are the authorized representatives of Local 28. *Heiner refused to read it!* Pertinent provisions of the constitution are set out in Exhibit A to this opinion.

The constitution does not authorize the International to replace local bargaining representatives except under clear, specified procedures, which have not been followed here.

The defendant's agents, although men of broad experience in managing labor and negotiating labor agreements, and even though they knew such constitutions do regulate rights between Locals and Internationals, refused to look at the International's constitution and refused as far as the record shows to make any inquiry into whether the group of late comers was duly authorized under the International's constitution. They took the position simply that the new group, headed by Messrs. Charles Babb, James Dickinson, Frank Parker, Grady Hildreth, Lester Hildreth and others, *said* they were now Local 28, and that the company would not inquire beyond the representations of the International and its agents.

The defendant continued to negotiate with the International's representatives, and after five or six meetings they completed negotiations about seven o'clock in the morning of September 3, 1969, after an all-night bargaining session. A handwritten memorandum was signed that morning, September 3, to evidence the agreement. Its terms have not yet been put into effect.

As recently as late August company representatives (although they had been bargaining for a new contract with the International on several days from July 28 to September 3), told assembled representatives of both production and sales people that they could not meet with either of the contesting groups. On several days during August and September, up to September 13, the defendant did meet with the plaintiffs about *grievances,* but contrary to the practice of many years' standing, these grievance procedures resulted in no adjustment but simply resulted in insistence upon arbitration, and for separate arbitration on separate days of one grievance at a time.

On September 18, 1969 the defendant posted a notice on the plant bulletin board (Exhibit D to the complaint) stating that only the International and its designees were authorized to bargain for the employees, and listed a new committee excluding Griffith, Fetherson and the other duly elected bargaining committee members. A copy of that notice is attached hereto marked Exhibit B.

On September 24, 1969, Griffith called for Brown, the plant manager, and could not reach him. He and seventy-five or a hundred other employees went to the office and were denied access to Brown. Brown showed up a few minutes later, but refused to talk with them.

These actions of the defendant provoked a strike, in protest.

On an unspecified date about October 1, the defendant posted on the bulletin board a second notice, copy of which is attached marked Exhibit C, which (1) retracted the part of the September 18 notice which had had the effect of withdrawing recognition of Local 28. However, this second notice (2) erroneously notified the workers that Griffith and Fetherson had been suspended from their offices and no longer have authority to speak for the Union. A reading of the International constitution and a simple inquiry into the facts would have shown that the "suspension" statement was erroneous.

The defendant contends that the plaintiffs are barred of injunctive relief under the "clean hands" doctrine because of actions of the Local in its dispute with the International about the Local's intended disaffiliation from the International under the procedures set out in the constitution. The plaintiffs have not forwarded to the International the International's share of dues since July of 1968 and defendant says this leaves plaintiffs with unclean hands in their suit against the employer. The court, based in part upon consideration of the "clean hands" doctrine, is separately ruling this day that the plaintiffs have no right to injunctive relief against the International. However, the equities between the two unions or between the International and the Local are not matters

for the defendant employer to take advantage of. The "clean hands" doctrine, in the opinion of the court, does not justify denial of injunctive relief. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 279–284, 76 S.Ct. 349, 100 L.Ed. 309 (1955); NLRB v. Harris-Woodson, 179 F.2d 720 (4th Cir., 1950).

■ In the opinion of the court, this series of actions on behalf of the defendant amounts to a number of breaches of the defendant's contract with the plaintiffs. ⸴ The effects upon the contract rights and other rights of the Local and its members are difficult if not impossible to measure in damages; the remedy in damages is inadequate; irreparable harm will result to the plaintiffs if continued breach of the contract by the defendant is not restrained. The court as a matter of discretion and equity finds that the parties should be restored as nearly as possible to their status as it existed before the first breach occurred, pending final determination, by agreement, or before the National Labor Relations Board, or through the procedures set out in the International's constitution, or by other peaceful means, as to who is the proper bargaining group or personnel to represent and be Local 28. Textile Workers' Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Retail Clerks Intern. Ass'n v. Lion Dry Goods, 369 U.S. 17, 82 S.Ct. 541 (1962); Smith v. Evening News, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); Parks v. International Brotherhood of Elec. Workers, 314 F.2d 886 (4th Cir., 1963).

An order is being issued accordingly.

## EXHIBIT A

Excerpts from the Retail, Wholesale and Department Store, AFL–CIO CONSTITUTION, as adopted May, 1966 and revised at the 10th Convention at Miami, Florida.

ARTICLE VII.—*Membership.* * * * Section 9. * * * (b) Subject to the provisions of Article XVII, the local union to which the member belongs is irrevocably designated, authorized and empowered by him exclusively to represent him for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or any terms or conditions of employment, and for the negotiations, execution, revision and termination of contracts with employers covering all such matters.

ARTICLE VIII.—*Local Unions. Section 1.* * * * (C) The books, funds, contracts and other property of the local unions shall at all times remain the sole and exclusive property of the local unions.

* * * * * *

*Section 15.* The Local president shall preside at all meetings of the Local Union. He shall enforce the provisions of this Constitution. He shall appoint all committees not otherwise provided for and be ex-officio member of all committees. He shall perform such other duties as the Local Union or Local Executive Board may assign to him.

ARTICLE XIII. *Discipline of Local Union Officers. Section 1.* Any officer of the International shall have the right to file charges against local officers for violation of any of the provisions of the local constitution or the International Constitution or for any other conduct detrimental to the best interests of the local union or the International.

*Section 2.* Written charges shall be filed with the Secretary-Treasurer of the International, who shall immediately forward a copy of said charges to the secretary-treasurer of the local union in which the accused is an officer, or, in the event that the secretary-treasurer is the officer accused, to the president of the local. Upon receipt of such charges by the secretary-treasurer or the president, as the case may be, of the local, within ten days after the filing of the charges with the local, the executive board of the local shall hear and decide the charges. The decision of the executive board of the local shall be presented to the membership of the local at a special meeting of its membership within 30 days called for the

purpose of reviewing the decision of the executive board.

*Section 3.* The International President or his duly designated representative shall have the right to appear and be heard before the executive board of the local and the special membership meeting called for the purpose of reviewing the decision of the executive board.

*Section 4.* The decision of the membership of the local shall be final and binding and there shall be no right in the International to review such decision. Anything to the contrary notwithstanding, the International shall have the right to either suspend or revoke the charter of the local in the manner provided for in this Constitution.

ARTICLE XVI.—*Disaffiliation. Section 1.* Affiliation of local unions with the International Union is voluntary and the right of local unions to disaffiliate from the International at any time shall be inviolate, irrespective of any other provision of this Constitution, provided, however, that in any case of disaffiliation there shall be compliance with the following procedures and conditions: (a). The local union, by act of its executive board, shall notify the International Union in writing by registered mail of its intention to commence disaffiliation proceedings within the local. Such notice of intention must include a clear and precise statement giving the reasons for the intended disaffiliation proceedings. (b). At least 90 days after such written notice to the International Union, at a special local membership meeting called for that purpose, after ten days written notice of the time and place, and which said written notice shall set forth the purpose of the meeting, the local union shall submit to its membership the question of whether or not to disaffiliate from the International Union. The same notice shall be given to the International Union by registered mail, and the International shall have the right to designate a representative to be present at the meeting and to participate in the discussion of the question. (c). The vote on the question shall be by secret ballot, at a meeting or meetings called for that purpose, according to such procedures as may be mutually agreed upon between the representatives of the International Union and the local union officers. In the event agreement is not obtained, the secret ballot shall be conducted in strict compliance with such rules as may be decided by the Honest Ballot Association or a similar organization. At any meeting or meetings held for the purpose of voting on disaffiliation, a quorum shall be a majority of the membership of the local, and the vote to disaffiliate shall require a majority of the votes cast. (d). In the event of disaffiliation, the local union shall be required to meet all its financial obligations to the International up to the effective date of disaffiliation. (e). Upon disaffiliation in accordance with these procedures, the local union shall have no claims for monies paid to the International Union and the International Union shall have no claim upon the assets, funds, contracts or other properties of the local union.

*Section 2.* Affiliation of joint boards, joint councils and district organizations with the International Union, is voluntary and the right of the subordinate bodies to disaffiliate from the International at any time shall be inviolate irrespective of any of the provisions of this Constitution, provided, however, that in any case of disaffiliation, there shall be compliance with the provisions of this Article. (a). In the event of disaffiliation, the joint board, joint council or district organization shall be required to meet all its financial obligations to the International Union up to the effective date of disaffiliation. (b). Upon disaffiliation, in accordance with these procedures, the joint board, joint council or district organization shall have no claims for monies paid to the International Union and the International Union shall have no claims upon the assets, funds, contracts or other properties of the joint board, joint council or district organization.

ARTICLE XVII.—*Collective Bargaining.* \* \* \* *Section 2.* The right to

bargain collectively for the whole membership of a local union shall lie with the executive board of the local union or officers designated by it and with the International Union or its representative when the local union so requests. The result of negotiations and the agreement shall be subject to ratification by the local union or by the members affected thereby.

## EXHIBIT B

## TO ALL PRODUCTION, SHIPPING, RECEIVING, SANITATION, MAINTENANCE, GARAGE, AND STOCK ROOM EMPLOYEES

The National Labor Relations Board (Region 11, Winston-Salem, N. C.) has confirmed to the Company that it is the Retail, Wholesale and Department Store *International Union* which is the *only* labor organization duly certified under law to represent you as bargaining agent in the matters of wages, hours, and working conditions.

This, of course, means that the Company has the legal obligation to recognize and deal with the R. W. D. S. U. International only and such of its authorized representatives as the International shall specify to the Company in writing from time to time to the exclusion of all others claiming to represent you. This is our obligation under law with which we intend to comply, unless and until we are directed to do otherwise by order of the National Labor Relations Board.

Pursuant to the rights which the R. W. D. S. U. International has by virtue of its N. L. R. B. certification, the International Union has thus far informed the Company that the following persons are its duly authorized representatives:

1. James Dickinson, International Representative.
2. Henry Jenkins, International Representative.
3. E. Lester Hildreth, Shop Committee Chairman.
4. Cecil J. Hyatt, Committee Member.
5. Pearl R. Davenport, Committee Member.
6. Sandy G. Caudle, Committee Member.
7. Mae Smith, Committee Member.
8. Bobby Stone, Committee Member.
9. Barbara Cotton, Committee Member.
10. Jesse Reese, Committee Member.
11. Della C. Lambert, Committee Member.
12. Janis Rushton, Committee Member.

The International Union has also informed the Company that neither Mr. Irving Lebold nor Mr. Elliot Martin has any authority to represent the International Union, and hence no authority to represent you.

The Company will hold itself open to meet with the Union to discuss grievances which may arise from time to time but where this process requires the Company to meet with a Grievance Committee, the Company intends to fulfill its labor contract obligation in this regard by meeting with from three (3) to five (5) of the above named committee members as spelled out in Article XI, Section 3 of our contract.

The Company will insist that the individual steps or levels of discussion outlined in Article XI of our contract for the handling of grievances be strictly observed. To avoid any difficulty or confusion in meeting to discuss grievances, the Company intends that such meetings be prearranged with Company management and be confined to a discussion of those topics agreed to be discussed in advance.

It is the policy of this Company that no unauthorized persons are to be present on the premises with special emphasis on the general production area. The Company intends to vigorously enforce this policy and we ask for your cooperation in this regard. You are asked to leave the production area promptly after finishing your scheduled work. Do not engage any fellow workers in conversation while

**630**

they are still on the job, or in any way interfere with their work, especially during your rest breaks. If necessary, the Company will enforce this rule with disciplinary action up to and including discharge.

The Company also requests that duly authorized Union representatives first obtain the approval of the Plant Manager before entering the plant.

Thank you.

> American Bakeries Company
> By: (s) J. J. Brown
>   J. J. Brown, Plant Manager

jww

> September 18, 1969
> cc: R. W. D. S. U. International

## EXHIBIT C

## NOTICE

To All Production, Shipping, Receiving, Sanitation, Maintenance, Garage, And Stock Room Employees

On September 18, 1969, we notified you that the National Labor Relations Board had confirmed to the Company that the International of the Retail, Wholesale and Department Store Union was the only labor organization duly certified under law to represent you as bargaining agent in the matter of wages, hours and working conditions. We also stated that the Company had the legal obligation to recognize and deal only with the International Union and with such of its authorized representatives as the International specified.

In making that statement, we did not, of course, mean to suggest that we had withdrawn recognition from Local 28 as a branch or agent of the RWDSU. This Local Union has been recognized along with the International as the bargaining agent with which we have a collective bargaining contract.

We have been advised, however, that William A. Griffith and Clarence Fetherson have been suspended from the offices they formerly held in Local 28, Retail, Wholesale and Department Store Union,

and that they no longer have authority to act or speak for the Union.

You may be assured that we will continue in the future, as we have in the past, to deal with Local 28 of the Retail, Wholesale and Department Store Union, and such other authorized representatives as the Union shall designate. We will not, and under the law we cannot, recognize and deal with any other union, because no other union occupies the position of the certified or lawfully recognized bargaining agent.

AMERICAN BAKERIES COMPANY