**AMOCO PRODUCTION COMPANY,**
Petitioner Cross-Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent Cross-Petitioner.

No. 78–1042.

United States Court of Appeals, Fifth Circuit.

March 7, 1980.

Barnes, Hickam, Pantzer & Boyd, James A. Strain, George J. Zazas, Indianapolis, Ind., Robert M. O'Connell, Chicago, Ill., for petitioner-cross-respondent.

Janet C. McCaa, Atty. N.L.R.B., Elliott Moore, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D.C., for respondent-cross-petitioner.

Edward Boone Miller, Chicago, Ill., for other interested parties.

Before COLEMAN, Chief Judge, KRAVITCH and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge.

This is a petition for review of an order of the National Labor Relations Board (hereinafter referred to as the "NLRB", or the "Board") and a cross-petition for enforcement of the order.

The National Oil Workers Union (hereinafter referred to as "NOWU") Local 14 had been the certified bargaining representative of the hourly employees in the production department of Amoco Production Company (hereinafter referred to as "AMOCO") since 1963, and the company and the union had been parties to a collective bargaining agreement since 1965. The workers in the bargaining unit represented by NOWU were divided into the Houston division and the New Orleans division. Only the former is involved in this case. In 1972, the national board of directors of NOWU voted to dissolve and recommended affiliation with the Oil, Chemical and Atomic Workers Union, AFL–CIO (hereinafter referred to as "OCAW"). The local conducted two elections in 1972, but each time the proposal to affiliate was defeated, and NOWU Local 14 continued to operate as an independent, unaffiliated union.

In 1973 and 1974, officers of the local scheduled another election. Nine meetings were held throughout the Houston division to discuss the proposed affiliation. Meetings were open to members and non-members, who were advised that the vote would be limited to members but that membership and, hence, voting eligibility could be realized by signing dues-authorization cards. Because the Houston division was spread over such a wide geographical area, the election was conducted by mail. There were 214 votes in favor of affiliation and 71 against. Notices of the results were posted throughout the Houston division. There is no evidence that any employee ever expressed dissatisfaction with the results to the company.[1]

In June of 1974, Amoco received an undated resolution, signed by the executive board of NOWU Local 14, to apply to OCAW for affiliation for the Houston division. Accompanying the resolution was a letter from the local's president stating that the Houston division employees had voted in favor of affiliation by a 214 to 71 vote, that the local wanted to continue the same organization, structure, officers, and organizational functions as before, and that its assets would continue in the custody of the local. The company did not reply to this letter. In July, 1974, the local's secretary-treasurer wrote two letters to two different company officials informing them of the affiliation vote, but these letters claimed that the vote was 212 for and 60 against. He also advised that "[o]ur Officers will remain the same as will most of our activity so far as it will not conflict with the O.C.A.W. Constitution." The local sent another communication to Amoco in September, 1974, concerning a change in the dues check-off procedure.

---

1. OCAW did not fare as well in the New Orleans division in the affiliation election there. When Amoco was told that its New Orleans division employees favored affiliation with OCAW, it petitioned the NLRB for a Board-conducted representation election. An election was held in January, 1973, in which OCAW representation was rejected by the New Orleans division employees.

On September 27, 1974, Amoco withdrew recognition of NOWU Local 14, but refused to recognize OCAW as the bargaining agent of its Houston division employees pending the outcome of a Board-conducted representation election, for which Amoco had that day petitioned the NLRB. At this time, there was still in existence a collective bargaining agreement between NOWU Local 14 and Amoco which did not expire until February 29, 1976. Amoco, in a letter, notified its employees of this action. The letter stated that it was treating the existing collective bargaining agreement as void but that contract terms affecting the employees individually, e. g., wages and hours, would be maintained. A list of the collective bargaining provisions was included, with a notation by each indicating whether Amoco intended to extend, revise or abrogate the provision. The employees were informed also that the company was discontinuing the dues check-off and that union dues already collected for the month would be returned.

In October and November of 1974, OCAW filed unfair labor practice charges against the company with the National Labor Relations Board and a complaint was issued charging that Amoco had violated § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1) & (5), by unilaterally cancelling the collective bargaining agreement and by refusing to bargain. This blocked Amoco's election petition. On September 20, 1975, the Board issued a decision and order sustaining the allegations of unfair labor practice and ordering Amoco to reinstate the collective bargaining agreement retroactively. *Amoco Production Co.*, 220 N.L.R.B. 861, 1975–76 NLRB Dec. (CCH) ¶ 16,515 (1975). In doing so, the NLRB adopted the findings of fact and conclusions of law of the Administrative Law Judge (hereinafter referred to as the "ALJ") who heard the case.

The ALJ made rather extensive findings on the validity of the affiliation election. He then determined that the OCAW local was the "alter ego" of NOWU Local 14 and, therefore, its successor as representative of the Houston Division employees. Board member Jenkins dissented on the ground that the affiliation election was invalid because of the exclusion of union non-member employees in the voting process.

Following the Board's order, Amoco recognized OCAW Local 4–14 as the bargaining representative of the Houston division employees, reinstated the collective bargaining agreement, and began anew the check-off of union dues after a 15-month lapse. Amoco and OCAW Local 4–14 entered into a new collective bargaining agreement on March 9, 1976. However, a dispute arose over Amoco's liability to the union for failure to check off dues during the 15-month period. The Board, again adopting the ALJ's findings and conclusions, issued an order that Amoco pay OCAW $45,750.00 plus interest in back dues. *Amoco Production Co.*, 233 N.L.R.B. 158, 1978 NLRB Dec. (CCH) ¶ 18,884 (1977).

The full Board, upon the suggestion that its decision that the affiliation election was valid overruled Board precedent, decided to reconsider its earlier orders. By a 3-to-2 decision, these orders were affirmed. *Amoco Production Co.*, 239 N.L.R.B.No. 182, 1978–79 NLRB Dec. (CCH) (1979). The Board held that union affiliation votes are basically internal, organizational matters, and, as long as the elections are conducted with "due process," the Board will give effect to the union's vote, even though non-union members of the bargaining unit had been excluded from voting. It found the election in question met those requirements, and, to the extent that its decision was inconsistent with its prior holding in *Jasper Seating Co.*, 231 N.L.R.B. 1025, 1978 NLRB Dec. (CCH) ¶ 18,519 (1977), that non-union members must be allowed to vote in affiliation elections, *Jasper Seating* was overruled.

Amoco contends that the Board erred in determining (1) that OCAW Local 4–14 was the "alter ego" of and successor to NOWU Local 14; (2) that the affiliation election was valid; and (3) that Amoco committed unfair labor practices by refusing to bargain with OCAW Local 4–14 as the agent of its employees.

■ According to § 8(a)(5) of the National Labor Relations Act (hereinafter referred to as the "NLRA"), 29 U.S.C.A. § 158(a)(5), "[i]t shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the *representatives of his employees* . . . ." (emphasis supplied). Certainly, a union duly elected by a majority of employees in an NLRB conducted and certified election is such a representative. 29 U.S.C.A. § 159. But that method is not exclusive; there are other means by which representative status may be conferred, and in those cases the employer has a duty to bargain with the representative. One such situation is that in which one union is a successor to another which previously represented the employees. In certain instances, the second union is entitled to recognition as the employees' representative. Failure to bargain with the second, successor union will subject the employer to unfair labor practice charges under § 8(a)(5). The circumstances which give rise to a valid successorship are in controversy here.

> Whether or not a merged [or affiliated] union should continue to be considered the bargaining representative of a unit of employees depends on a factual determination—is it a continuation of the old union under a new name or is it a substantially different organization?

*NLRB v. Commercial Letter, Inc.,* 8 Cir. 1974, 496 F.2d 35, 39.

This factual determination is for the Board to make initially. We are commanded in principle and by precedent not to re-examine its decision if it is supported by substantial evidence on the record as a whole. *NLRB v. Commercial Letter, Inc., supra; see also, Carpinteria Lemon Assn. v. NLRB,* 9 Cir. 1956, 240 F.2d 554, 557, *cert. denied,* 1957, 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427.

The factual determination at issue revolves not around superficial criteria such as the size of the respective locals or organizational differences in the national unions of which they become a part. Rather, we must consider whether changes have occurred in the rights and obligations of the union's leadership and membership, and in the relationships between the putative bargaining agent, its affiliate, and the employer. *NLRB v. Pearl Bookbinding Co., Inc.,* 1 Cir. 1975, 517 F.2d 1108, 1111–1112.

*J. Ray McDermott & Co. v. NLRB,* 571 F.2d 850, 857 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978). See also, *Sun Oil Co. of Pennsylvania v. NLRB,* 576 F.2d 553 (3d Cir. 1978); *NLRB v. Bernard Gloekler North East Co.,* 540 F.2d 197 (3d Cir. 1976); *Retail Store Employees Union, Local 428 v. NLRB,* 528 F.2d 1225 (9th Cir. 1975); *NLRB v. Newspapers, Inc.,* 515 F.2d 334 (5th Cir. 1975); *American Bridge Div., U.S. Steel Corp. v. NLRB,* 457 F.2d 660 (3d Cir. 1972); *Carpinteria Lemon Ass'n v. NLRB,* 240 F.2d 554 (9th Cir. 1956), *cert. denied,* 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957).[2]

Had the Board applied the above principles to the case before it, our task would be simply to review the record to see if the Board's decision is supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 464–65, 95 L.Ed. 456, 467–68 (1951). Unfortunately, that is not the case.

In its original decision, the Board, by adopting the ALJ's findings of fact and conclusions of law, determined that OCAW Local 4–14 was the successor to and a continuation of NOWU Local 14, or, as stated in the ALJ's Conclusions of Law, the "alter ego" of Local 14. The factual basis for this conclusion is obscure. Set forth in the order is a "Resolution" adopted by the Board of Directors of Local 14 on June 12, 1974, which states that Local 14 desires to retain the organizational structure and officers as before, to keep the collective bargaining agreement in force, to hold the assets and property of Local 14 henceforth in the name

---

2. For scholarly criticism of the so-called "continuity of representation doctrine," see, Comment, *Union Affiliations and Collective Bargaining,* 128 U.Pa.L.Rev. 430 (1979).

of OCAW Local 4–14, and to continue the present organization as bargaining representative of the company's production and maintenance employees. In the ALJ's "Discussion", he "noted" that all members of Local 14's Board of Directors, save one, occupied their same positions as before affiliation and that the former local vice president had become president. He then concluded that because affiliation elections are "internal union matters" the participation of non-union members of the bargaining unit was not required.

However, to the extent that these statements are findings of fact, an assumption itself precariously made, if they were used as a factual basis upon which to decide that OCAW Local 4–14 was the "alter ego" of and successor to NOWU Local 14, that administrative reasoning process is not disclosed. The three cases cited to reinforce that conclusion do not aid our attempted analysis. In *NLRB v. Harris-Woodson Co.*, 179 F.2d 720 (4th Cir. 1950), and *Continental Oil Co. v. NLRB*, 113 F.2d 473 (10th Cir. 1940), the court simply agreed with the Board's judgment, which presumably had support in the record, that the identity of the bargaining representative was preserved after affiliation. In *Pearl Bookbinding Co.*, 206 N.L.R.B. 834, 1973 NLRB Dec. (CCH) ¶ 25,882 (1973), enf'd, 517 F.2d 1108 (1st Cir. 1975), the Board made *findings* that the newly affiliated local's "structure, administration, officers, assets, membership, autonomy, by-laws, size, and territorial jurisdiction remained the same; and the local continued to negotiate contracts with employers on behalf of employees it represented, and to administer collective-bargaining agreements to which it was a party." 517 F.2d at 1111–12. The Court of Appeals enforced the Board's order after a

review based on *Commercial Letter, supra;*, *Retail Store Employees Union, supra;* and *Carpinteria Lemon, supra.* The first and second supplemental Board decisions do not further discuss the continuity of representation. Thus, we are left somewhat confused as to both the legal and factual bases of the Board's decision and any attempt at review only raises two important questions. Did the Board apply the proper legal principles in determining that OCAW Local 4–14 was the successor to NOWU Local 14? And, if so, what record facts did the Board rely upon in making that decision?

■■■ "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626, 636 (1943) (*Chenery I*). And, if review is of a decision the agency alone is authorized to make and which it has not made, or for which the grounds invoked are inadequate, the reviewing court may not canvass the record and form its own conclusion, for that would amount to substituting a judicial judgment for one which Congress has decreed the agency alone is authorized to make, and the only solution is to remand to the agency. *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995, 1999 (1947) (*Chenery II*); *Chenery I, supra*, 318 U.S. at 88, 63 S.Ct. at 459, 87 L.Ed. at 633. See also, *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 196–97, 61 S.Ct. 845, 853–54, 85 L.Ed. 1271, 1284 (1941).[3]

*NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) provides an example of the application of the *Chenery* principles to a Board

---

3. The Supreme Court recently reaffirmed a commitment to *Chenery I* and *Chenery II* in its application of their principles to review of other types of administrative action. See, *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (review of Atomic Energy Commission rulemaking procedures); *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (review of informal administrative action by the Comptroller of the Currency). For recent interpretations of the *Chenery* decisions by several circuit courts of appeals, see, *United States v. Kane*, 602 F.2d 490, 493–94 (2d Cir. 1979); *City Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board*, 600 F.2d 681, 688–93 (7th Cir. 1979); *Plumbers and Steamfitters Local 342 v. NLRB*, 598 F.2d 216, 221–22 (D.C. Cir. 1979).

**112**

decision. The Court of Appeals for the First Circuit held that the Board based its determination of an appropriate bargaining unit on an impermissible controlling factor in violation of § 9(c)(5) of the NLRA, 29 U.S.C.A. § 159(c)(5). The Supreme Court disagreed that the only possible basis for the Board's determination was the one selected by the court of appeals. The Court said, rather, that the Board failed to articulate its reasons for deciding as it did, and therefore a remand was necessary in order that the reason for its determination of the appropriate bargaining unit might be disclosed. "[T]he Board's actions here," said the Court, "cannot properly be reviewed. When the Board so exercises the discretion [to determine the appropriate bargaining unit] given to it by Congress, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it.'" 380 U.S. at 442–43, 85 S.Ct. at 1064, 13 L.Ed.2d at 954–55 (footnote omit.), quoting *Phelps Dodge, supra,* 313 U.S. at 197, 61 S.Ct. at 854, 85 L.Ed. at 1284.

■ Here, we, like the Supreme Court in *Metropolitan Life* are left wondering *why* the Board decided that OCAW Local 4–14 was the successor to NOWU Local 14.[4] Perhaps it would be possible for us to review the record and to determine whether OCAW Local 4–14 "is . . . a continuation of the old union under a new name or is it a substantially different organization?" *J. Ray McDermott, supra,* at 857, *quoting, Commercial Letter, supra,* at 39. However, because this is a factual determination for the Board to make, we are commanded by

precedent to avoid substituting our own judgment for that of the Board. Accordingly, the case must be remanded to the Board for a determination not inconsistent with this opinion.[5]

REMANDED.[6]

the employer and the union should be given substance in making a determination whether one union succeeds to the bargaining rights of another. However, we said in *J. Ray McDermott* that "we must consider whether changes have occurred in the rights and obligations of the union's leadership and membership, and in the relationships between the putative bargaining agent, its affiliate, *and the employer.*" 571 F.2d at 857 (emphasis supplied).

---

**4.** We do not consider this a case of over-technical reliance on the requirement that an agency give the basis for its decision. See, *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, n. 6, 89 S.Ct. 1426, 1430, n. 6, 22 L.Ed.2d 709, 715, n. 6 (1969) (plurality opinion); *Alabama Ass'n of Ins. Agents v. Board of Governors of the Federal Reserve System,* 533 F.2d 224, 236–37 (5th Cir. 1976), *vacated in part,* 558 F.2d 729 (1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978).

**5.** At oral argument, counsel for the Board expressed disagreement with the proposition that changes in the bargaining relationship between

**6.** Our disposition obviates the need to consider the remaining issues raised by Amoco.