NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NEWSPAPERS, INC., Publisher of the
Austin American and the Austin
Statesman, Respondent.

No. 74–3004.

United States Court of Appeals,
Fifth Circuit.

June 27, 1975.

Rehearing Denied Aug. 29, 1975.

Elliott Moore, Deputy Assoc. Gen. Counsel, John F. Depenbrock, Jr., N. L. R. B., Washington, D. C., Louis V. Baldovin, Jr., Reg. Director, Region 23, N. L. R. B., Houston, Tex., for petitioner.

Robert L. Ballow, Nashville, Tenn., for respondent.

. Before TUTTLE, GODBOLD and MORGAN, Circuit Judges:

TUTTLE, Circuit Judge:

The National Labor Relations Board found the Respondent, Newspapers, Inc., guilty of a violation of § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., when it refused to bargain with a representative of its pressroom employees. The Board issued a bargaining order and now seeks enforcement. We grant enforcement.

The facts of this case are essentially undisputed. The Respondent is the publisher of two newspapers in Austin, Texas. For over 70 years it voluntarily recognized Austin Printing Pressmen and Assistants Union No. 143 (Austin Local 143). On September 30, 1971 the Employer and Austin Local 143 executed a collective bargaining agreement effective for one year, thereafter automatically renewable unless either party gave written notice 60 days prior to the expiration of the contract that it intended to renegotiate. This collective bargaining agreement was in effect throughout this dispute.

Austin Local 143 was found by the Board[1] to be composed of two separate divisions, the Web Division composed of the printing pressmen and assistants of the Respondent's two newspapers, and the Commercial Division composed of all commercial pressmen and their assistants in Austin. These two divisions conducted their affairs entirely separately: they held separate meetings, and elected separate officers.[2] A bargaining committee of the Web Division negotiated with the Respondent on behalf of Austin Local 143. Of the employer's 20 pressroom employees in 1971, 19 belonged to the Web Division of Austin Local 143 (one employee not being a member of any union.) These 19 employees of the Respondent comprised the entire membership of the Web Division of Austin Local 143.

On September 11, 1971 notice was sent to these 19 members of the Web Division, as well as to the one non-union employee of Newspapers, Inc., notifying them that a meeting was to be held on October 5, 1971 at which time a vote would be conducted as to whether the Web Division should merge with Houston Newspaper Printing Pressmen's Union No. 43 (hereinafter Houston Local 43.)[3] The members of the Web Division met as scheduled on October 5. All 19 of its members attended. These 19 employees of the Respondent voted unanimously to merge with Houston Local 43.[4]

Austin Local 143 notified the International Union that this vote had been taken, and requested formal permission for the merger. Houston Local 43 shortly thereafter also notified the International that it agreed to the merger, and also requested approval. The International Union on December 10, 1971 notified the two locals that the Board of Directors of the International had "approved the re-

---

**1.** The Board accepted the factual findings of the administrative law judge, but differed as to the legal question of the applicability of the Board's union successorship doctrine.

**2.** Article III of Austin Local 143's Constitution provided that the elective officers should consist of a president, a first vice president, a second vice president, a secretary-treasurer, two recording secretaries, two sergeant-at-arms, and four committeemen. While the Constitution provides the president should be elected from the membership at large, it specifically provided that one vice president, together with two other members, should be elected by the Commercial Division and consti-

tute the executive committee for the Commercial Division, while the other vice president, together with two other members, should be elected by the Web Division and should constitute the executive committee for the Web Division.

**3.** The September 11 notice specifically stated that: "Be further advised that the foregoing vote will not affect the present charter of Austin Printing Pressmen and Assistants Union and/or the commercial members thereof in any manner."

**4.** The Respondent's one non-union pressroom employee did not attend the meeting.

quest of the Web members of your local union transferring to Houston Newspaper Local No. 43."

The Respondent was notified of the imminent merger in separate letters from Houston Local 43 on January 7, 1972 and from Austin Local 143 on January 27, 1972. Both letters advised the employer that the merger would occur on February 1, 1972.[5] In preparation for the February 1, 1972 merger Austin Local 143 divided its assets, and on February 1 Houston Local 43 acquired the Web Division's assets, and assumed all its liabilities. All 19 members of the Web Division transferred to Houston Local 43 on that date, and thereafter paid their dues to the Houston Local.

Following the merger Houston Local 43 was found by the administrative law judge to have permitted its new Web Division to function essentially as it had in the past when it constituted a separate Web Division of Austin Local 143. Despite its change of affiliation from one local to another, the Web Division continued to be composed solely of the employees of the Respondent—and it continued to function as a separate organization. The former President of Austin Local 143 became the Chairman or (as he was also called) the "Area Representative" of the Austin Web Division of Houston Local 43; while none of the former officers of Austin Local 143's Web Division served as constitutional officers of Houston Local 43, most retained their positions as officers of the Austin Web Division of Houston Local 43. The bargaining committee for the Web Division members remained unchanged.

On July 10, 1972 the Austin Web Division of Houston Local 43 gave notice to the Respondent of its intent to renegotiate a collective bargaining agreement on behalf of its pressroom employees; this letter was sent by one L. B. Dyer, signed as Secretary of the "Austin Division" of Houston Local 43.[6] This July 10, 1972 letter also notified the Employer that a bargaining committee would represent the Web Division members in collective bargaining negotiations.[7]

On July 13, 1972 the Employer responded that it refused to bargain with Houston Local 43, as "Local 143 is the certified representative of our pressroom employees."[8]

Thereafter on August 8, 1972 the bargaining committee for the Web Division requested a meeting to discuss a new contract; when the Employer learned that they intended to negotiate as members of Houston Local 43, it refused to bargain.

In response to this refusal Houston Local 43 secured new authorization cards from the pressroom employees of the Respondent; the record shows at this time that the Respondent had 44 employees in its pressroom, and that either 42 or 44 of them signed cards evidencing their wish that they be represented by

---

5. The Respondent has contended that it was not properly informed of this merger. The January 27, 1972 letter to the Employer from Austin Local 143 was signed by the secretary of that union, an employee in the Respondent's pressroom, and stated specifically:

"This is to advise your office that as of February 1, 1972 the Web Division of Local 143 will merge with Houston Newspaper pressmen No. 43."

6. Dyer was the former secretary-treasurer of Austin Local 143, and was a pressroom employee of the Respondent.

7. This bargaining committee was composed of Kenneth Hurst, M. Hepburn and Charles

Joyce. All were pressroom employees of the Respondent. Hurst was the former President of Austin Local 143, and after the merger served as Chairman of the Web Division of Houston Local 43; Joyce was a former Vice President and Chairman of the Web Division of Austin Local 143, and after the merger served as Chairman of the Executive Committee of the Austin Web Division of Houston Local 43.

8. In fact Austin Local 143 had never been certified by the NLRB, but had been voluntarily recognized by the employer. The Respondent gave no other reason for its refusal to bargain.

Houston Local 43.[9] The employer refused to look at these cards and thereafter refused to bargain with any of the members of the Web Division of Houston Local 43.

Based on these facts the Board found that the Web Division of Houston Local 43 was the successor to the Web Division of Austin Local 143, and that accordingly the Employer's duty to bargain with Austin Local 143 carried over to the Houston Local. The Board held that the Employer violated § 8(a)(5) and (1) of the Act when it refused to bargain with the Web Division of Houston Local 43.

## I. WAS HOUSTON LOCAL 43 THE SUCCESSOR OF AUSTIN LOCAL 143?

■ Whether the Houston Local 43 was the successor to the Web Division of Austin Local 143 normally "depends on a factual determination—is it a continuation of the old union under a new name or is it a substantially different organization?" NLRB v. Commercial Letter, Inc., 496 F.2d 35, 39 (8th Cir. 1974). Although the Board's union successorship doctrine has been invoked far less frequently than its employer successorship doctrine,[10] the union successorship doctrine has been upheld in a number of cases. NLRB v. Commercial Letter, Inc., supra; Supak & Sons Manufacturing Corp., 1972 NLRB 1228 (1971) enforced 470 F.2d 998 (4th Cir. 1973); Canton Sign Co., 174 NLRB 906 (1969) enforcement denied on other grounds, 457 F.2d 832 (6th Cir. 1972); Retail Clerk's International Assoc. v. NLRB, 125 U.S.App.D.C. 389, 373 F.2d 655 (1967); NLRB v. Weyerhaeuser Co., 276 F.2d 865 (7th Cir. 1960) cert. denied 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960); Union Carbide & Carbon Corp. v. NLRB, 244 F.2d 672 (6th Cir. 1957); Carpinteria Lemon Assoc. v. NLRB, 240 F.2d 554 (9th Cir. 1957) cert. denied 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957).

> "The test of survival bargaining obligation in each case is whether the successor organization continues to constitute, in the words of the statute, the 'representative[s] of [the employees'] own choosing.' (§ 7 of the Act.) The industrial stability sought by the Act would unnecessarily be disrupted if every union organizational adjustment were to result in displacement of the employer-bargaining representative relationship."

Canton Sign Co., supra, 174 NLRB 908–909.[11]

(5th Cir. 1970); NLRB v. Valleydale Packers, Inc., 402 F.2d 768 (5th Cir. 1968). As this Court said in Foodway of El Paso,

> "The acquiring employer is the successor to the obligations of his predecessor if there is continuity in the business operation."

496 F.2d at 120; NLRB v. Auto Ventshade, Inc., 276 F.2d 303, 304 (5th Cir. 1960).

---

**9.** The cards themselves do not appear in the record; one witness at the hearing before the administrative law judge testified he thought two employees might have refused to accept a card—but all who took a card apparently authorized Houston Local 43 to serve as their bargaining representative.

At oral argument in response to a question from the Court, Counsel for the Respondent conceded the record fails to disclose any conflict among the pressroom employees as to which union they wished to represent them. Austin Local 143 after the February 1, 1972 merger did not contain a single pressroom employee of the Respondent, and it has never attempted to bargain on behalf of the Respondent's employees.

**10.** For applications of the employer successorship doctrine, see, e. g., NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); NLRB v. Foodway of El Paso, 496 F.2d 117 (5th Cir. 1974); NLRB v. Zayre Corp., 424 F.2d 1159

**11.** We note that although in NLRB v. Canton Sign Co., 457 F.2d 832 (6th Cir. 1972) enforcement of the Board's order was denied, it was denied solely on the basis that the record failed to show that the respondent's employees (who constituted a minority of the membership of the two unions involved) had in fact consented to the merger; the Court did not reject the union successorship doctrine, rather it found that the Board lacked substantial evidence that the "successor" union had been chosen by a majority of the Respondent's employees to represent them. No similar doubt exists here: the Web Division was comprised solely of employees of the Respondent, and the merger vote was unanimous.

A refusal to apply the successorship doctrine in many cases could easily result in a denial of the employees' rights to be represented by a union of their choice: here, for example, were Austin Local 143 to be held to be the only authorized representative of the Respondent's pressroom employees, as Respondent contends, the Employer would be obliged to bargain with the union to which none of its employees belonged—indeed, a union which its employees unanimously voted to leave.

 While the Board has not adopted any rigid requirements as to the method of the merger election, it has held that the election must be conducted under democratic procedures, with fair notice to all concerned employees; the election procedures must not be so "lax" or "substantially irregular" as to "negate the validity of the election," NLRB v. Commercial Letter, Inc., *supra*, 496 F.2d at 42. The principal question is whether in fact the election represents the majority view of the members of the union. *See* Fall River House, Inc., 198 NLRB No. 164 (1972); Hamilton Tool Co., 190 NLRB No. 114 (1971). The Respondent does not dispute the fact that the election was conducted with fair notice to every member of the Web Division of Austin Local 143, and the vote taken was unanimous to merge with the Houston Local. Rather the Respondent argues that notice ought to have been given to every member of Austin Local 143, including the members of the Commercial Division.

 This argument essentially overlaps with the Respondent's principal claim that the Board's successorship doctrine cannot apply to cases such as this one where only a section of a union merges with another, rather than the entire union. The Respondent relies principally on Harbor Carriers of the Port of New York v. NLRB, 306 F.2d 89 (2d Cir. 1962) cert. denied 372 U.S. 917, 83 S.Ct. 727, 9 L.Ed.2d 723 (1963) where the Court refused to apply the Board's union successorship doctrine when the previously recognized union divided, and the resulting two unions éach contained a portion of the respondent's employees, and the new organization competed with the original union for the right to represent the employees. There the Court emphasized the fact that two competing organizations were claiming the right to represent the unit's employees, and secondly distinguished previous union successorship cases where the decision to merge with a second union was a unanimous one. In short, in *Harbor Carriers* a conflict between employees within a single bargaining unit resulted in two separate competing labor organizations. In this case, the Commercial Division of Austin Local 143 has never claimed the right to represent the Respondent's pressroom employees; there is no competing labor organization in the case, and there was no conflict among the unit's employees. Rather the entire Web Division unanimously elected to transfer to the Houston Local. Under these circumstances we see no reason why the Board's successorship doctrine ought not to apply—it would accurately reflect the expressed wishes of the Web Division employees on the date of the merger, and it would promote stability in the bargaining relationship between the Respondent and its pressroom employees.

Thus while we recognize that this case involves the novel legal question as to whether different divisions of a single combination local may elect individually to merge with other locals, given the undisputed findings that the "representative character of the bargaining agent," Canton Sign, *supra*, 174 NLRB at 908, was not altered by the merger, we agree with the Board that the Web Division of Houston Local 43 succeeds to the bargaining rights of the Web Division of Austin Local 143. We emphasize that we rely principally on the findings that the Web Division operated entirely separately from the Commercial Division when they were part of the same Austin Local, and the Web Division remained as a separate division after it transferred to the Houston Local—the division continued to negotiate directly with the Employer, and the bargaining relationship

remained unaltered until the Employer categorically refused to bargain.

## II. DID THE SUCCESSOR UNION REPRESENT A MAJORITY OF THE RESPONDENT'S PRESS-ROOM EMPLOYEES?

§ 9(a) of the NLRA provides that

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive [bargaining] representatives of all the employees . . ."

§ 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of § 9(a)."

██ Normally a Board supervised election is the preferred route by which a union acquires the status of exclusive bargaining representative. NLRB v. Gissel Packing Co., 395 U.S. 575, 602, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). However, the Supreme Court in *Gissel* made it clear that such a Board supervised election is not the only route by which a union may acquire the status of bargaining representative, and acknowledged that

"Since § 9(a) . . . refers to the representative as the one 'designated or selected' by a majority of the employees without specifying precisely how that representative is to be chosen, it was early recognized that an employer had a duty to bargain whenever the representative presented 'convincing evidence of majority support.' "

395 U.S. at 596, 89 S.Ct. at 1931.

██ In our view, it is now clearly established that "an election [is] not the only predicate for a union claim to majority status," Truck Driver's Union Local No. 413 v. NLRB, 159 U.S.App. D.C. 228, 487 F.2d 1099, 1106 (1973). Thus, despite the fact that neither Austin Local 143 nor Houston Local 43 has ever been certified by the Board as the bargaining representative for the Respondent's pressroom employees, nonetheless the Respondent can be held to have violated § 8(a)(5) in refusing to bargain with the Houston Local. The General Counsel for the Board in unfair labor practice proceedings bears the burden of proving the majority status of a union demanding recognition, however "[t]here seems to be no question but that the expiring agreement does give rise to a rebuttable presumption of majority status of the Union," NLRB v. Dayton Motels, Inc., 474 F.2d 328, 332 (6th Cir. 1973). The administrative law judge in this case acknowledged that Austin Local 143 would be afforded a presumption of majority status as the incumbent union were it to have demanded that the Respondent bargain with it in July, 1972, but declined to extend the same presumption to the Houston Local because he found the union successorship doctrine inapplicable. Because we agree with the Board that Houston Local was the successor to the bargaining right of Austin Local 143, we believe the normal presumption of majority status which attaches to a previously voluntarily recognized union following the expiration of a contract would apply to the Houston Local's demand to bargain. Zim's Foodliner, Inc. v. NLRB, 495 F.2d 1131 (7th Cir. 1974); Toltec Metals, Inc. v. NLRB, 490 F.2d 1122 (3d Cir. 1973); NLRB v. Cayuga Crushed Stone Co., 474 F.2d 1380 (2d Cir. 1972); NLRB v. Denham, 469 F.2d 239 (9th Cir. 1972); NLRB v. Cast Optics Corp., 458 F.2d 398 (3d Cir. 1972); NLRB v. Broad Street Hospital and Medical Center, 452 F.2d 302 (3d Cir. 1971); NLRB v. Frick Co., 423 F.2d 1327 (3d Cir. 1970).[12] This presumption is rebuttable, and an employer may resist an

---

12. *See also* NLRB v. San Clemente Publishing Corp., 408 F.2d 367 (9th Cir. 1969); NLRB v. Master Touch Dental Laboratories, 405 F.2d 80 (2d Cir. 1968); NLRB v. Montgomery-Ward & Co., 399 F.2d 409 (7th Cir. 1968); NLRB v. Universal Gear Service Corp., 394 F.2d 396 (6th Cir. 1968).

8(a)(5) charge if it can produce evidence that the incumbent union in fact no longer represented a majority of the employees, or that it had in good faith, a reasonable doubt as to the union's continuing majority status. The employer may not, however depend "solely upon unfounded speculation or a subjective state of mind," NLRB v. Gulfmont Hotel Co., 362 F.2d 588, 589 (5th Cir. 1966).[13] Rather the employer must come forward with evidence casting "serious doubt of the Union's [continuing] majority status," NLRB v. Frick Co., *supra*, 423 F.2d at 1331; NLRB v. Cast Optics Corp., 458 F.2d 398, 407 (3d Cir. 1972). This rebuttable presumption shifts the burden of going forward to the Employer "to establish either that the Union in fact no longer represented a majority of the employees, or that there were circumstances affording a reasonable basis for a good faith doubt about the Union's continued majority." NLRB v. Denham, 469 F.2d 239, 244 (9th Cir. 1972).

The Respondent has made no effort to prove that Houston Local 43 in fact lacked the majority status it is presumed to have had when it demanded to bargain. Rather it relies solely on the fact that its work force had doubled from February 1, 1972 when the merger took place to July 10, 1972 when Houston Local 43 made its bargaining demand, to prove its good faith in refusing to bargain.[14]

Whether in fact an expansion in work force alone—absent other independent evidence supporting a good faith doubt of a union's majority status—establishes an employer's right to refuse to bargain with an incumbent union is a question we do not confront. Here there was convincing evidence rebutting any such inference of good faith which might be drawn from such work force expansion. Although Houston Local 43 obtained new authorization cards from the employees hired after the time of the merger on February 1, 1972, the Employer categorically refused to even look at the cards. Such a refusal has been held to show bad faith, Terrell Machine Co. v. NLRB, 427 F.2d 1088 (4th Cir. 1970) cert. denied 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970). At the very least, such a refusal convincingly disproves any claim by the Employer that it was genuinely concerned for the associational rights of its employees.[15]

The Respondent failed either to prove that Houston Local 143 lacked majority status, or that it refused to bargain because in good faith it had a reasonable doubt of the Houston Local's majority status—accordingly the Board's order should be enforced.

Similarly, we reject the Employer's claim that because its work force had expanded once again during the pendency of this litigation, it ought

---

13. The presumption of majority status afforded an incumbent union is essentially the same as that of a certified union following its certification year, and can be rebutted in the same manner. *See* Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); NLRB v. Anvil Products, Inc., 496 F.2d 94, 96, n. 3 (5th Cir. 1974); NLRB v. Gulfmont Hotel Co., *supra*; Terrell Machine Co. v. NLRB, 427 F.2d 1088 (4th Cir. 1970) cert. denied 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970).

14. Although some 22 of the Respondent's employees had never voted for Houston Local 43 as they were hired after the merger vote was taken, this fact alone does not prove that they did not wish to be represented by the Houston Local in July, 1972 when the demand to bargain was made. The record is silent as to the

actual preferences of the new employees—save for the fact no petition for a Board supervised election was filed until 1974.

15. The Respondent argues the authorization cards would not be sufficient under NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) to require recognition of a new union. In our view the *Gissel* standards governing initial recognition of a new union are largely inapplicable—for an incumbent union as we have said has a presumption of majority status which a previously unrecognized union does not. The Employer apparently would have us treat the over 70-year history of voluntary recognition of Austin Local 143's majority status among its employees as being legally irrelevant, and this we decline to do.

**342**

to be absolved of the Board's bargaining order. In any number of similar cases employers have made the claim that delay in completing the Board's unfair labor practices proceedings should prevent a Board bargaining order from being enforced due to turnover and change in the employer's work force. Invariably an employer making such an argument does so in terms of its concern for its employee's rights of free choice. *See e. g.,* NLRB v. Schill Steel Products, Inc., 480 F.2d 586, 591 (5th Cir. 1973). While it is true that the Employer here has not demonstrated the type of extreme hostility to unionization as the respondent in *Schill,* nonetheless in our view the law is settled that events subsequent to the unlawful refusal to bargain cannot be posed as a defense to a subsequent bargaining order.[16] As the Supreme Court observed in NLRB v. Katz, 369 U.S. 736, 748, n. 16, 82 S.Ct. 1107, 1114, 8 L.Ed.2d 230 (1962)

> "[i]nordinate delay in any case is regrettable, but Congress has introduced no time limitation into the Act except that in § 10(b) . . . ."

and as the Court emphasized in Franks Bros. v. NLRB, 321 U.S. 702, 705–6, 64 S.Ct. 817, 819, 88 L.Ed. 1020 (1944), the temporary nature of a bargaining order merely insures that a "bargaining relationship once rightfully established [is] given a fair chance to succeed." Thus the general rule is that the presumption of actual majority status continues "during the period of litigation of the contemporaneous unfair labor practices, and for a reasonable period of time after they have been remedied, in order to give the bargaining relationship . . . a reasonable chance to operate and succeed without outside interference or improper pressure." NLRB v. Rish Equipment Co., 407 F.2d 1098, 1100 (4th Cir.

1969); NLRB v. Little Rock Downtowner, Inc., 414 F.2d 1084, 1091 (8th Cir. 1969); NLRB v. John S. Swift Co., 302 F.2d 342, 346 (7th Cir. 1962).

Accordingly we grant enforcement of the Board's bargaining order.

---

**16.** For example, bargaining orders have been upheld where all union adherents have been replaced by an employer. *See, e. g.,* NLRB v. Andrew Jergens Co., 175 F.2d 130 (9th Cir. 1949) cert. denied 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503 (1949); Sakrete of Northern California, Inc. v. NLRB, 332 F.2d 902 (9th Cir. 1964) cert. denied 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965); NLRB v. Ozark Motor Lines, 403 F.2d 356 (8th Cir. 1968).