## ST. VINCENT HOSPITAL, Petitioner,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent.

### No. 78–1813.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 23, 1980.

Decided May 5, 1980.

\* \* \* \* \* \*

Robert P. Tinnin, Jr. (Gregory D. Huffaker, Jr., Albuquerque, N. M., with him on the brief) of Poole, Tinnin & Martin, Albuquerque, N. M., for petitioner.

Ruah Donnelly Lahey, Washington, D. C., Atty. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and William Wachter, Deputy Asst. Gen. Counsel, N. L. R. B., Washington, D. C., with him on the brief), for respondent.

Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

St. Vincent Hospital seeks to set aside an order of the National Labor Relations Board in which the Board found the Hospital in violation of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5). The bases of the violations were the Hospital's refusal to recognize and bargain with District 1199 NM of the National Union of Hospital Health Care Employees, RWDSU, AFL–CIO (District 1199 NM), as the successor to the St. Vincent Hospital Professional Performance Association (PPA), and its refusal to process a grievance file by District 1199 NM. Specifically, the Board held that PPA's affiliation with the National Union of Health Care Employees (National Union), which resulted in the change of PPA's name to District 1199 NM, did not give rise to a question of representation. The Board filed a cross-application for enforcement of its decision. We order that the Board's decision be enforced.

PPA was certified as the bargaining representative of the Hospital's registered and licensed practical nurses on November 15, 1974. At that time, PPA was affiliated with the New Mexico Nurses Association, a branch of the American Nurses Association. Under the terms of this affiliation, PPA sent all of its membership dues to the New Mexico Nurses Association and, in exchange, was provided access to strike funds, legal services and advisors for contract negotiations. Rec., vol. I, at 138–139.

However, the members of PPA became dissatisfied with its relationship with the state organization. The membership believed that the New Mexico Nurses Association was impinging upon PPA's local autonomy and was not providing adequate support services. Rec., vol. I, at 143–144. Accordingly, PPA terminated its association with the New Mexico Nurses Association in April 1976 and began to look for another large organization with which to affiliate.

PPA's executive committee contacted representatives of the National Union to discuss possible affiliation. Subsequently, the executive committee approved a resolution to affiliate with the National Union. After the resolution was unanimously approved by members in attendance at a meeting called especially to discuss the matter, an affiliation agreement was executed with the National Union.[1] Thereafter in a secret ballot election conducted by the American Arbitration Association (AAA), a majority of the PPA membership voted in favor of the affiliation.

When representatives of District 1199 NM informed the Hospital of the election results, the Hospital refused to recognize the affiliation. The Hospital contended that all members of the bargaining unit, not just union members, should have been provided an opportunity to vote in the election. In addition, the Hospital argued that the union failed to demonstrate that the election procedures assured a fair and free choice to those who did vote. PPA and the National Union agreed to postpone the affiliation until all members of the bargaining unit were polled.

On February 28, 1978, the AAA conducted a secret ballot election among all 271 nurses in the bargaining unit. The election was held on Hospital premises in conformity with procedures established by the AAA. Of the 206 employees in the unit who voted, 157 voted in favor of and 49 against affiliation.

Nevertheless, the Hospital persisted in its refusal to recognize the affiliation and to bargain with District 1199 NM as the successor to PPA. It contended that PPA's

affiliation with the National Union resulted in a substantial change in the bargaining representative, thereby raising a representation question that could only be resolved by a Board conducted election. The PPA membership then petitioned the Board to amend its certification to designate District 1199 NM as the bargaining representative of the Hospital's employees in place of PPA. After conducting a hearing, the Regional Director granted the certification amendment on April 28, 1978, reasoning that "[t]he amendment of the certification in this case will insure to the employees the continuity of their present organization and representation . . . ." Rec., vol. III, at 455.

By this time, the union had also filed an unfair labor practice charge against the Hospital based upon the Hospital's refusal to recognize and bargain with District 1199 NM. In the unfair labor practice proceedings, the Hospital requested another hearing to present evidence that was allegedly either undiscovered or unavailable at the time of the amendment of certification proceedings. The Board denied the request noting that "[a]ll material issues raised by the Respondent in this proceeding were or could have been litigated in the prior representation and amendment of certification proceedings." Rec., vol. III, at 568. The Board granted the General Counsel's Motion for Summary Judgment, finding the Hospital in violation of sections 8(a)(1) and (5) of the Act for refusing to recognize and bargain with District 1199 NM.

The major issue on appeal is whether there is substantial evidence to support the

[1]. The affiliation agreement provided that upon affiliation, all PPA members would become members of District 1199 NM of the National Union; that the National Union would be successor to PPA's certification as the bargaining representative of the Hospital nurses and successor to all recognition agreements and collective bargaining agreements with the Hospital; that all PPA's assets, liabilities, books and records would be transferred to and fully assumed by the National Union; that PPA's officers and committees would continue to function as officers and committees of District 1199 NM, with the same titles and responsibilities; that District 1199 NM would take the necessary steps after affiliation to comply organizationally with the National Union constitution; and that the National Union officers would be the national officers of all former PPA members. Rec., vol. II, at 324–326. It should be noted that although the agreement provided for successorship by the National Union, the Board specifically found the parties intended that PPA would become the local affiliate of the National Union and that District 1199 NM, rather than the National Union, would be the successor to PPA.

Board's finding that the continuity of the bargaining representative was preserved after PPA's affiliation with the National Union.

■ The "right of a successor union to assume the status of certified bargaining agent held by its predecessor depends on a factual issue—is the new union a continuation of the old union under a new name or affiliation or is it a substantially different organization?" *Carpinteria Lemon Assoc. v. N. L. R. B.,* 240 F.2d 554, 557 (9th Cir. 1956), *cert. denied,* 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957); *Continental Oil Co. v. N. L. R. B.,* 113 F.2d 473 (10th Cir. 1940). *See also N. L. R. B. v. Commercial Letter Inc.,* 496 F.2d 35 (8th Cir. 1974).

Such a factual determination is committed to the Board in the first instance, and we must affirm the Board's determination so long as it is supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *N. L. R. B. v. Commercial Letter Inc.,* 496 F.2d at 39. Upon review of the record, we conclude that there is substantial evidence to support the Board's finding that District 1199 NM was a continuation of PPA.

In *Retail Store Employees Union, Local 428 v. N. L. R. B.,* 528 F.2d 1225, 1228 (9th Cir. 1975), the court emphasized that "when an independent merges into a local of an international . . . retention of the same officers [is] important," since this suggests "continuity where it counts, in a bargaining relation . . . ." When the same persons participate in communications with the company with respect to grievances, contract negotiations, and the like, continuity is likely to be preserved. Similarly, in *Continental Oil Co. v. N. L. R. B.,* 113 F.2d at 477, where we held that the continuity of organization was preserved when a union shifted its affiliation from the American Federation of Labor to the Committee for Industrial Organization, we stressed that the officers of the union remained the same after the transfer of affiliations. *See also J. Ray McDermott & Co.*

*v. N. L. R. B.,* 571 F.2d 850 (5th Cir. 1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *N. L. R. B. v. Hershey Chocolate Corp.,* 297 F.2d 286 (3d Cir. 1961).

In the instant case, after PPA's members voted to affiliate with the National Union, representatives of the newly formed District 1199 NM assured the Hospital that all officers and functional leaders would remain the same. Rec., vol. II, at 346. Indeed the affiliation agreement between PPA and the National Union specifically provided that:

> "Upon affiliation the officers, Executive Committee, Membership Committee, Negotiating Committee, and all other standing committees of the PPA shall continue to function with the same titles and responsibilities as they now have pursuant to the Constitution and Bylaws of the PPA except that they shall hold such titles and exercise such responsibilities as members of and on behalf of District 1199 NM of the National Union."

Rec., vol. II, at 349. The evidence suggests that District 1199 NM did in fact retain the same officers and committees, and even the same attorney to advise them with respect to labor relations. In addition, District 1199 NM assured the Hospital that "[W]e anticipate no change in our day-to-day relationship with the hospital. The continuity of organization in the local Union has been completely preserved and we intend to honor fully all contractual commitments with the hospital." Rec., vol. II, at 346.

Nevertheless, the Hospital argues on appeal that PPA's new affiliation with the National Union *ipso facto* caused a substantial change in the bargaining representative which precludes a finding of continuity of representation. Specifically, the Hospital contends that the National Union's constitution significantly affects the local autonomy PPA formerly enjoyed; that District 1199 NM may in the future increase in size as a result of organizational drives among other Hospital employees; and that the National Union's assets, which include a large strike fund, are substantially greater than those of PPA. However, we find these contentions unpersuasive.

Contrary to the Hospital's contention, the National Union's constitution does not significantly affect PPA's local autonomy. Indeed the National Union's constitution guarantees District 1199 NM substantial local control over its own funds, strike calls, grievances, collective bargaining agreements and geographical boundaries. Rec., vol. II, at 245, 251–252, 255, 263–264, 274. In short, there is substantial evidence to support the Board's conclusion that "the National's Constitution establishes a relationship between the National and the District not unlike that enjoyed by many internationals and their locals and does not significantly affect the autonomy of the bargaining representative and its officers." Rec., vol. III, at 454.

■ The fact that District 1199 NM may be actively seeking to organize other units is irrelevant. Any union may seek to expand its membership and that does not affect the continuity of the bargaining relationship with the employer.

Finally, PPA's prior affiliation with the New Mexico Nurses Association flies in the face of the Hospital's argument that District 1199 NM's access to the expanded resources of the National Union has substantially changed the bargaining representative. PPA's relationship with the state and national nurses organizations at the time of its original certification had also provided access to a strike fund and funds for technical and legal assistance. Rec., vol. I, at 138–139.

The Hospital relies heavily on the cases of *N. L. R. B. v. Bernard Gloekler North East Co.*, 540 F.2d 197 (3d Cir. 1976), and *American Bridge Division, U.S. Steel Corp. v. N. L. R. B.*, 457 F.2d 660 (3d Cir. 1972). However, these cases are readily distinguishable.[2] In *Bernard Gloekler*, the members of an independent local voted to affiliate with the preexisting local affiliate of the United Auto Workers. However, before the affiliation poll, the UAW Local had unsuccessfully sought to oust the independent by demanding a representation election. Accordingly, the court's refusal to honor the affiliation was based largely on its concern that the UAW local was attempting to subvert the contract bar rule by an affiliation strategem. No such concern is present here. Moreover, unlike the present case, the affiliation there subjected the independent to a constitution that made substantial inroads upon its local autonomy.

In *American Bridge*, the election in which a majority of the members of a local voted to affiliate with the United Steelworkers was riddled with procedural irregularities: the election was held without secret ballots; those conducting the election had no membership list to insure that only one ballot was handed out to each person; and the election was conducted without providing the local's membership sufficient time for debate. Moreover, the subsequent affiliation bound the local to a national constitution which provided for national union control over collective bargaining negotiations, finances and strike calls. Therefore, the court found a "change in the fulcrum of

2. The Hospital's reliance on *Sun Oil Co. v. N. L. R. B.*, 576 F.2d 553 (3d Cir. 1978), is also misplaced. There the Regional Director ordered representation elections when the company declined to recognize the affiliation of two independent unions with a large international union. After the employees approved the affiliation, the company refused to comply with the old collective bargaining agreements negotiated between the independents and the company. Thus the issue in *Sun Oil* was whether *after a representation election* the company was bound by collective bargaining agreements negotiated by the independents before the affiliation, not whether a Board-conducted election was necessitated by the affiliation, which is the issue in this case.

In deciding that the company was not bound by the collective bargaining agreement, the Third Circuit held that the affiliation effected a substantial change in the bargaining agent and thereby terminated the old bargaining agreements. The court reasoned that the Board's agreement to conduct a representation election was wholly inconsistent with its position on appeal that no substantial change in bargaining representatives occurred. Here, on the contrary, the Board has steadfastly maintained that no Board-conducted election was required precisely because the affiliation did not effect a substantial change in the bargaining representative.

union control and representation" which threatened " 'the overriding policy of the Act . . . in favor of the interest in employees to be represented by a representative of their own choosing for the purposes of collective bargaining . . . .' " 457 F.2d at 664–665 (quoting from *N. L. R. B. v. Western & Southern Life Insurance Co.*, 391 F.2d 119, 123 (3d Cir. 1968)).

Here, in sharp contrast, the National Union's constitution did not significantly affect the local autonomy formerly enjoyed by PPA, as noted above. Furthermore, it is undisputed that the employees' approval of the affiliation in this case was expressed in a procedurally valid election.

Failing to honor the results of this election would run flatly counter to the important policy of protecting the employees' free choice of a bargaining representative. The observation in *N. L. R. B. v. Harris-Woodson Co.*, 179 F.2d 720, 723 (4th Cir. 1950), is apposite to this case:

"Metaphysical arguments as to the nature of the entity with which we are dealing should not be permitted to obscure the substance of what has been done or to furnish a smoke screen behind which the company may with impunity defy the requirements of the statute that it bargain with the representative that its employees have chosen. The identity of that representative, composed entirely of the company's employees, was not changed either by its change of name or its change of affiliation."

Thus we hold that when PPA's members expressed their desire to affiliate with the National Union and become members of District 1199 NM on February 28, 1978, District 1199 NM became the successor to PPA as the bargaining representative of the Hospital's nurses.

We have reviewed the other contentions of the Hospital and find them to be without merit. The Hospital's petition to set aside the order of the Board is denied, and the Board's cross-application for enforcement of its order is granted.