[Civ. No. 22638. Fourth Dist., Div. One. Mar. 18, 1981.]

NORTH SAN DIEGO COUNTY TRANSIT DEVELOPMENT BOARD, Plaintiff and Respondent, v.
DONALD VIAL, as Director, etc., Defendant and Appellant;
UNITED TRANSPORTATION UNION AFL-CIO et al.,
Real Parties in Interest and Respondents.

**COUNSEL**

Christine C. Curtis, Patricia M. Gates, Peter H. Weiner and Ernest E. Vivas for Defendant and Appellant.

Gray, Cary, Ames & Frye, O'Neal, Ready & Yeomans, James K. Smith, Paula L. Lehmann and James E. O'Neal for Plaintiff and Respondent.

Davidson & Matsen and James L. Evans for Real Parties in Interest and Respondents.

OPINION

COLOGNE, Acting P. J.—North San Diego County Transit Development Board (Transit Board) filed a petition for a peremptory writ of mandate to compel Donald Vial, Director of Industrial Relations for the State of California (Director), to withdraw his certification of the United Transportation Union (Union) to conduct representation proceedings pursuant to Public Utilities Code section 125520 et seq. The superior court issued the writ commanding the Director to withdraw the certification and conduct proceedings in accordance with the California Administrative Code. The Director appeals.

On August 15, 1978, the Director certified the North County Transit Employees Association, Inc. (Employees Association) as the bargaining representative for Transit Board's employees. In the election preceding the certification, the employees had three options on their ballot for representation and the ultimate vote was 109 for the Employees Association, 63 for Bus Drivers Local 1309 (ATU), AFL-CIO, and 1 for no association (18 members did not vote).

In the fall of 1979, the Employees Association determined to merge with the Union as an internal matter and, after the vote was taken approving that plan by 110 to 15, the Union requested an amendment of the certification be issued by the Director. The amendment was issued by the Director on November 29, 1979. The Transit Board refused to deal with the Union, contending the amended certificate was issued without giving a proper notice, hearing or secret ballot election as required by law. The Union sued to compel the Transit Board to negotiate with it and the Board countered with a petition for a writ of mandate compelling the Director to withdraw the certification and to conduct representation proceedings pursuant to the Public Utilities Code. On March 5, 1980, the trial court issued a writ commanding the withdrawal of the certification and ordered any further representation or election proceedings be held pursuant to title 8 of the California Administrative Code.

Consistent with the superior court decree, on June 20, 1980, a secret ballot representation election was held with the consent of the parties and the Union received the necessary votes to replace the Employees Association as representative of the employees. The appropriate amendment to the certification has now been duly issued. Transit Board has

requested the appeal be dismissed as moot since the consent election resolved all issues.

■ Although, as a general rule, an appeal presenting only abstract or academic questions should be dismissed as moot, the appeal is not moot or subject to dismissal if the question to be decided is of general public interest or if there is a likelihood of recurrence of the controversy (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Grier* v. *Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330 [127 Cal.Rtpr. 525]). The issues here do have broad public interest as we will discuss, and we find no authority in the California decisions addressing the issue in this case or the pertinent sections in the Public Utilities Code. Revision of the pertinent sections of the Administrative Code admittedly under study is necessary. We therefore deem it appropriate not to consider this issue moot.

Public Utilities Code section 125521 reads: "Any question which may arise with respect to whether a majority of employees in an appropriate unit desire to be represented by a labor organization shall be submitted to the Director of Industrial Relations. *In resolving such questions of representation,* including the determination of the appropriate unit or units, petitions, and the conduct of hearings and elections, *the director shall apply the relevant federal law and administrative practice developed under the Labor Management Relations Act, 1947*, as amended, and, for this purpose, shall adopt appropriate rules and regulations.

"*The State Conciliation Service shall* administer such rules and regulations and shall *provide for a prompt public hearing and secret ballot election to determine the question of representation* and shall certify the results to the parties.

"Any certification of a labor organization to represent or act for the employees in any collective-bargaining unit shall not be subject to challenge on the grounds that a new substantial question of representation within such collective-bargaining unit exists until the lapse of one year from the date of certification or the expiration of any collective-bargaining agreement, whichever is later, except that no collective-bargaining agreement shall be considered to be a bar to representation proceedings for a period of more than two years." (Italics added.)

■ The Board contends this section of the law creates some ambiguity in that it states relevant federal law and practice shall be applied

and then states the state conciliation service shall provide for a prompt public hearing or secret ballot election to determine the question of representation. It contends by reason of the latter requirement an election is always necessary. The Director, on the other hand, appears to take the position he has the power to make the decision of representation without public hearing or secret ballot election because that is allowed under federal practice.

The relevant federal statute is Labor Management Relations Act section 9(c)(1), 29 U.S.C.A. section 159(c) (the Act). "(c)(1) *Whenever a petition shall have been filed*, in accordance with such regulations as may be prescribed by the Board—

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a) of this section;[1] *the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.* Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. *If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.*" (Italics added.)

Both the Public Utilities Code section and the Act refer to a "question of representation." The cases interpreting section 159(c) have evolved the so-called union successorship doctrine, not unlike the employer successorship doctrine. The test of survival bargaining obligation in each case, it holds, is whether the successor organization continues to constitute, in the words of the statute, "the representative(s) of [the employees'] own choosing" (§ 7 of the Act). (*N.L.R.B* v. *Newpapers, Inc.* (5th Cir. 1975) 515 F.2d 334, 338, quoting from *Canton Sign Co.* (1969) 174 N.L.R.B 906.)[2] The cases suggest the industrial stability

---

[1]Subsection (a) of the section reads, in part: "(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives . . . ."

[2]See also *Supak and Sons Mfg. Corp.* (1971) 192 N.L.R.B. 1228, enforced (4th Cir. 1973) 470 F.2d 998; *N.L.R.B.* v. *Commercial Letter, Inc.* (8th Cir. 1974) 496 F.2d 35; *Canton Sign Co.* (1969) *supra*, 174 N.L.R.B. 906, enforcement denied on other

sought by the Act would unnecessarily be disrupted if every union organizational adjustment were to result in displacement of the employer-bargaining representative relationship.

It is generally held to be a factual question committed in the first instance to the NLRB, subject to review in the federal courts, whether the successor is a continuation of the old union under a new name or is a substantially different organization (*N.L.R.B.* v. *Newspapers, Inc., supra,* 515 F.2d 334, 338; *J. Ray McDermott & Co., Inc.* v. *N.L.R.B.* (5th Cir. 1978) 571 F.2d 850, 857, cert. den. 439 U.S. 893 [58 L.Ed.2d 238, 99 S.Ct. 250]; *N.L.R.B.* v. *Commercial Letter, Inc., supra,* 496 F.2d 35, 39; *Carpinteria Lemon Ass'n* v. *National Labor Rel. Bd.* (9th Cir. 1956) 240 F.2d 554, 557; *Retail Store Emp. U., Local 428* v. *N.L.R.B.* (9th Cir. 1975) 528 F.2d 1225, 1227). That factual question must meet the test of legitimate successorship. The leading case of *American Bridge Division, U.S. Steel Corp.* v. *N.L.R.B.* (3d Cir. 1972) 457 F.2d 660, at pages 663 to 666, sets out a most exacting test. To come within the successor doctrine, the people who conduct a substantial part of the unit's dealings with management must be the same, and the powers of the unit's members to control those agents must be the same. It is not enough that only the contract, local officers and employees be the same, the rights of the parties must be the same.

In *American Bridge, supra,* at page 664, the court pointed out affiliation of a local union with a national union is "a commitment to change in the fulcrum of union control and representation. There is a clear departure from the former status of an independent union, where local officers negotiated the contract, settled the terms, handled the grievances and decided when and when not to strike, and where employees in the bargaining unit alone fixed their dues, fines and assessments." For the amendment of the certificated union to sustain this test, the following three features must converge: (1) there must be acceptance by the original certified union, (2) the bargaining unit must remain substantially the same, i.e., there is continuity of bargaining representatives, and (3) the employees are shown to be able to fully and democratically

grounds (6th Cir. 1972) 457 F.2d 832; *Union Carbide & Carbon Corp.* v. *National Labor Rel. Bd.* (6th Cir. 1957) 244 F.2d 672; *Retail Clerk's International Assoc.* v. *N.L.R.B.* (D.C.Cir. 1967) 373 F.2d 655 [125 App.D.C. 389]; *N.L.R.B.* v. *Weyerhaeuser Co.* (7th Cir. 1960) 276 F.2d 865, certiorari denied (1960) 364 U.S. 879 [5 L.Ed.2d 102, 81 S.Ct. 168]; *Carpinteria Lemon Ass'n* v. *National Labor Rel. Bd.* (9th Cir. 1957) 240 F.2d 554, certiorari denied (1957) 354 U.S. 909 [1 L.Ed.2d 1427, 77 S.Ct. 1295]; *St. Vincent Hospital* v. *N.L.R.B.* (10th Cir. 1980) 621 F.2d 1054.

consider and vote on affiliation, i.e., in accordance with due process. In these instances, as with the mere name change, an election is not required and the Board may, after a public hearing, amend the certificate without the formality of an election.

Not all the circuit courts follow the strict test followed in *American Bridge, supra.* The decisions in the Third, Eighth and Ninth Circuits appear to place the greatest emphasis on continuity of representation, saying "[i]f there is continuity of representation, there is no requirement for a Board election. [Citations.] On the other hand, if there is no continuity of representation, management need not bargain with the new union until it has established its rights by an election." (*Retail Store Emp. U., Local 428* v. *N.L.R.B., supra*, 528 F.2d 1225, 1227.) Continuity is a factual question. *Retail Store Emp. U., Local 428* points out, "[w]hile there can be continuity of representation when an independent merges into a local of an international, explicit guarantees of unit autonomy and retention of the same officers are important." There must be the same unit authority and continuation of established procedures (at p. 1228).

We hold the appropriate federal test is as set down by *Retail Store Emp. U., Local 428, supra.* For all practical purposes, however, that includes the reasoning found in *American Bridge, supra*, for if there is continuity of representation, there is little likelihood there will be a schism with the original union, and internal fairness will be achieved by the federal practice.

In the context of federal precedent, Public Utilities Code section 125521 is not ambiguous. That section states the federal law and administrative practice *shall* prevail, and hearings and elections *shall* be conducted in the manner provided for by the state conciliation service. This does not mean hearings and elections must be held in every case as the Transit Board contends, nor does it mean the Director can arbitrarily avoid a hearing or an election.

Clearly, notice of the proceedings must be given to the parties in any case to meet the test of due process. If reasonable cause to believe a question of representation exists, a hearing upon due notice is required. "Reasonable cause to believe" does not call for a heavy burden of proof and the obviating of a hearing should be reserved for uncontested or especially clear cases. We note in the last 2 years the National Labor Relations Board has closed 115 amendment of certification and unit

classification cases and of these only 1 was completed without a hearing.[3] An election is required only if the Director finds upon the record of such a hearing that a question of representation exists. This finding would be subject to judicial review using a substantial evidence test applied to the record as a whole (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 487-488 [95 L.Ed. 456, 467-468, 71 S.Ct. 456, 464-465]; *N.L.R.B.* v. *Commercial Letter, Inc., supra,* 496 F.2d 35, 37, 39). All existing regulations of title 8 of the Administrative Code to the contrary should not be followed since those regulations must be in conformity with the authorizing statute found in the Public Utilities Code which requires adherence to federal law and practice.

■ In the absence of facts showing notice to the parties, a proper finding there was no reasonable cause to believe a question of representation existed, a hearing and a finding by the Director in this case, the judgment compelling the election was properly issued, but since a consent election has been held, the issue has been resolved.

The appeal is dismissed.

Wiener, J., and Todd (W. L.), J.,* concurred.

A petition for a rehearing was denied April 7, 1981.

---

[3]Forty Fourth Annual Report of the National Labor Relations Board.
*Assigned by the Chairperson of the Judicial Council.