**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-1171**

———————————

LAUREL BAYE HEALTHCARE OF LAKE LANIER, LLC,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent,

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL No.
1996,

Intervenor.

———————————

**No. 06-1237**

———————————

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

LAUREL BAYE HEALTHCARE OF LAKE LANIER, LLC,

Respondent.

———————————

On Petition for Review and Cross-application for Enforcement of an
Order of the National Labor Relations Board.  (10-RC-15475; 10-CA-
35752)

Argued:  September 19, 2006          Decided:  December 15, 2006

Before WILKINSON, MOTZ, and TRAXLER, Circuit Judges.

Petition for review denied and cross-application for enforcement granted by unpublished per curiam opinion.

**ARGUED:** Clifford H. Nelson, Jr., CONSTANGY, BROOKS & SMITH, Atlanta, Georgia, for Laurel Baye Healthcare, LLC, of Lake Lanier. Jewel Lynn Fox, NATIONAL LABOR RELATIONS BOARD, Office of the General Counsel, Washington, D.C., for the Board.  **ON BRIEF:** Leigh E. Tyson, CONSTANGY, BROOKS & SMITH, Atlanta, Georgia, for Laurel Baye Healthcare, LLC, of Lake Lanier.  Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Meredith Jason, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Office of the General Counsel, Washington, D.C., for the Board.  James D. Fagan, Jr., STANFORD FAGAN, L.L.C., Atlanta, Georgia, for Intervenor United Food and Commercial Workers Union Local 1996.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Laurel Baye Healthcare ("Laurel Baye") petitions this court for review of the December 28, 2005, Decision and Order of the National Labor Relations Board (the "Board"), directing Laurel Baye to bargain with the United Food and Commercial Workers Union, Local 1996 ("Local 1996") and determining that Laurel Baye violated § 8(a)(1) and § 8(a)(5) of the National Labor Relations Act, see 29 U.S.C.A. § 158(a)(1), (3) (West 1998), by failing to provide information and bargain as ordered. The Board cross petitions for enforcement of its Decision and Order. We deny Laurel Baye's petition for review and grant the Board's cross-petition for enforcement.

                              I.

Laurel Baye operates a nursing care facility for geriatric and disabled residents in Buford, Georgia. On August 31, 2004, Local 1996 filed a petition to represent a proposed collective bargaining unit, set by the Regional Director as "[a]ll full-time and part-time service and maintenance employees, [Certified Nursing Assistants ("CNA's")], restorative aids, activity assistants, medical records clerks, central supply clerks, and unit secretaries" at the facility. J.A. 518. The election was held on November 26, 2004. Fifty employees were eligible to vote. Thirty-two votes were cast for and eight votes were cast against Local 1996. Ten eligible employees did not vote.

3

On December 3, 2004, Laurel Baye filed objections to the election with the Board, asserting that the election was invalid because agents and other supporters of Local 1996 had engaged in pre-election activities that destroyed the laboratory conditions necessary for a fair and free election. Following an evidentiary hearing, the ALJ issued a report and recommendation that Laurel Baye's objections be overruled in their entirety. Laurel Baye filed exceptions to the hearing officer's decision and, on June 27, 2005, the Board issued a Decision and Certification of Representative, adopting the ALJ's findings and recommendations and certifying Local 1996 as the exclusive collective bargaining representative for the unit.

In order to obtain further review of the certification decision, Laurel Baye thereafter refused to recognize and bargain with Local 1996, or to furnish information requested by Local 1996 in its role as bargaining representative, prompting Local 1996 to file an unfair labor practice charge with the Board. The Board's General Counsel issued a complaint against Laurel Baye, alleging violations of § 8(a)(5) and § 8(a)(1) of the Act.[1]

---

[1]Section 8(a)(5) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C.A. § 158(a)(5). Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of [their protected] rights." 29 U.S.C.A. § 158(a)(1). Because an employer cannot obtain direct review of a Board's certification, a refusal to bargain is the "proper path to judicial review of the Board's election decision." Rosslyn Concrete Constr.

In response, Laurel Baye admitted its refusal to bargain and to furnish information, but again contested the validity of Local 1996's certification based on its earlier objections. In response to the General Counsel's motion for summary judgment, Laurel Baye asserted an additional claim that, because Local 1996 had disaffiliated from the AFL-CIO on July 29, 2005, after the election, an evidentiary hearing should be held to explore the continued validity of Local 1996's certification as the employees' bargaining representative. The Board granted the General Counsel's motion for summary judgment, ordering Laurel Baye to bargain with Local 1996 and to furnish the requested information. Laurel Baye then filed this petition for review, and the Board filed the cross petition for enforcement.

## II.

We begin with Laurel Baye's challenge to the validity of the election based upon the alleged destruction of laboratory conditions by agents and other supporters of Local 1996. It is well settled that the Board is vested "with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees" through an election. NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946); see NLRB v. Kentucky Tennessee Clay Co., 295 F.3d

Co. v. NLRB, 713 F.2d 61, 63 n.1 (4th Cir. 1983).

5

436, 441 (4th Cir. 2002). "The results of an NLRB-supervised representative election are presumptively valid, and we must uphold findings and conclusions of the Board so long as the decision is reasonable and based upon substantial evidence in the record considered as a whole." Kentucky Tennessee, 295 F.3d at 441 (internal quotation marks, citation, and alterations omitted).

However, "because the employees' right to exercise a fair and free choice in a representation election is the mandate, elections must be conducted in laboratory conditions, free from behavior that improperly influences the outcome." Id. (internal quotation marks and citations omitted); see also NLRB v. Georgetown Dress Corp., 537 F.2d 1239, 1242 (4th Cir. 1976). The employer may rebut the presumption that the election is valid, but only if it presents "specific evidence not only that the alleged acts of interference occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the election." Overnite Transp. Co. v. NLRB, 294 F.3d 615, 623 (4th Cir. 2002) (internal quotation marks omitted); see also NLRB v. Urban Tel. Corp., 499 F.2d 239, 242 (7th Cir. 1974) ("For conduct to warrant setting aside an election, not only must the conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employees' actions at the polls.").

In evaluating a challenge to the "laboratory conditions" of an election, "the source of the [coercive or threatening] behavior is

6

an important consideration." Kentucky Tennessee, 295 F.3d at 441. "[A]n election will be set aside for improper conduct by a union or union agents when threats, acts of coercion, or other improprieties occurred and 'materially affected the election results.'" Id. at 442 (quoting NLRB v. Herbert Halperin Distr. Corp., 826 F.2d 287, 290 (4th Cir. 1987)). But an election will be set aside for third-party conduct "only if the election was held in a general atmosphere of confusion, violence, and threats of violence, such as might reasonably be expected to generate anxiety and fear of reprisal, to render impossible a rational uncoerced expression of choice as to bargaining representation." Id. (internal quotation marks omitted).

A.

In its challenge to the election conditions, Laurel Baye claims that two of its former employees, CNA Patricia Cunningham and CNA Melissa Lott, were acting as union agents during the critical pre-election time period and, in that capacity, directly threatened three management employees and one unit employee and generally engaged in threatening speech in the workplace. According to Laurel Baye, the actions of Lott and Cunningham, exacerbated by three additional "threatening" incidents on the part of other persons, destroyed the laboratory conditions to such a degree that it interfered with the unit employees' ability to make a free and reasoned choice in the election.

7

We begin with the alleged conduct of Lott and Cunningham. Approximately two weeks after Local 1996 filed its petition for representation, Cunningham was suspended from employment pending an investigation of insubordination, and Lott was terminated from employment. Between ten and thirty minutes after her termination, Lott called Kristal Randolph in the Human Resources office and requested her final paycheck.[2] Randolph could hear Cunningham speaking in the background. At some point during the call, the conversation turned to Courtney Bell, Laurel Baye's Human Resources Coordinator. Randolph testified that Lott and Cunningham "made threats to [Bell]," claiming that "they were wrongfully terminated, . . . that they knew where [Bell's] grandmother lived . . . [and] mom lived, and that they would come after her," or send someone else "after her, too." J.A. 99. In addition, Cunningham called out to Randolph, "this is Patricia, let her know that I'm going to get her," J.A. 99, and "tell that bitch that I'm going to fuck her up." J.A. 100. The women also mentioned Charles James, the Assistant Director of Nursing, and Nancy Levin, the Director of Nursing, telling Randolph "they're going to get them, too." J.A. 101. The telephone call lasted approximately five minutes.

---

[2]Randolph was a member of management until mid to late September, when her position changed to Medical Records Clerk, which is a unit position. Although it is unclear whether she was a unit employee or management employee on the day of the call, she was a unit employee at the time of the election.

Randolph immediately informed Bell and other members of management about the telephone call and, after an unsuccessful attempt to file a report at the police station, Bell called the police and her parents from a phone at the nurse's station and reported the threats. Several unit employees in the area were close enough to overhear Bell reporting the substance of the telephone calls and were aware that a police officer came to the facility to prepare a report of the incident. Cunningham was terminated the following day. There is no evidence that Local 1996 or the upcoming election was mentioned in conjunction with this incident. However, Local 1996 officials did point to the terminations of Lott, Cunningham, and three additional employees as examples of employer action necessitating union representation in the Laurel Baye workforce.

Laurel Baye also presented testimony that, prior to their terminations, Lott and Cunningham wore Union insignia, told employees that "either you're with us or you're against us" when walking in the halls, J.A. 144, and were overheard commenting, when discussing word of an anonymous call made to a management employee, "now things are getting started." J.A. 229. There was also testimony that Lott or Cunningham called CNA Alicia Earls, who is related to Lott, a "bitch" and "Uncle Tom" upon discovering that Earls, in the course of a routine breakfast pick-up, returned with breakfast for supervisors as well as unit employees. Earls

9

testified at the hearing but was not questioned about this incident. Although she testified that she did not vote in the election, she also testified that she was not working that day. She did not testify that she refrained from voting because of this name-calling incident.

The threatening behavior of Lott and Cunningham, Laurel Baye argues, was exacerbated by three additional incidents which occurred during the pre-election time period. First, in September 2004, Robert White, an outside contractor who handled housekeeping in the Laurel Baye facility, informed management that he received a threatening telephone call at his home from an anonymous caller claiming to be associated with the union. Apparently White had posted a sign prohibiting solicitation of housekeeping employees during working hours. White did not testify at the hearing, but Bell testified that White mentioned an anonymous caller told him "that they didn't know why he was getting involved, that the situation did not involve him, . . . and that he just needed to stay out of it." J.A. 293. Alicia Earls also testified that White told her he had received a threatening call, but provided no details about the call.

Second, Brenda Walker, a management employee in staff development, testified that, approximately one week before the election, she told a group of employees that a union had not delivered on its promises to her family members and emphasized to

the employees the importance of being educated about the union. A few days later, Walker received a telephone call from an anonymous caller who asked her, "[W]ho told you to make that speech?" Walker was warned that, "[I]f you know what's good for you, you'll mind your own business." J.A. 139. Walker hung up on the caller and reported the threat to the police.

In the final incident, Activities Director Wendy Schrilla testified that CNA Deborah Cuffy reported that a union representative called her at home and eventually came to her home around 9 p.m. on a Sunday night. Cuffy did not testify, but Schrilla testified that Cuffy said she told the union representative she was not interested, and, when they persisted, Cuffy's husband informed Cuffy "that was enough of this." J.A. 243. Cuffy resigned her employment after this incident, but Schrilla testified that Cuffy did not provide a reason to her. Union organizer Taylor admitted that he visited Cuffy at her home, but there was no evidence that Taylor or anyone else engaged in threatening or coercive behavior towards Cuffy or that Cuffy quit her job because of union harassment.

B.

To evaluate whether an agency relationship exists between a company employee and a union, we apply the general common law of agency as developed by the Act. See Kentucky Tennessee, 295 F.3d at 442. "'[T]he question of whether the specific acts performed

11

were actually authorized or subsequently ratified shall not be controlling.'" Id. (quoting Georgetown Dress, 537 F.2d at 1244). "Rather, '[t]he final inquiry is always whether the amount of association between the [u]nion and the [employee organizers] is significant enough to justify charging the [u]nion with the conduct.'" Id. (quoting PPG Indus., Inc. v. NLRB, 671 F.2d 817, 822 n.8 (4th Cir. 1982)).

In an affidavit signed October 7, 2004, Eric Taylor, Local 1996's Organizing Director, stated that "Cunningham, Lott, and [one additional person] were our 'Committee' and attended every meeting" and that "[o]ther employees clearly saw these employees as leaders of the [u]nion campaign." J.A. 375. At the hearing, however, Taylor recanted, denying that Lott and Cunningham were agents of Local 1996 or leaders of the campaign, and referring to them as simply "key employees that attended some meetings" in the organizing effort. J.A. 93.

The ALJ recognized that "Taylor had previously described Lott and Cunningham as leaders of the organizing campaign and on the [Local 1996's] Committee," but found "no evidence that other employees regarded Lott and Cunningham as the leaders of the organizing campaign or that [Local 1996] ever held them out to employees as its agents." J.A. 469. The ALJ additionally concluded that the alleged threats did not justify setting aside the election.

12

On review, the Board affirmed the ALJ's findings and conclusions. With regard to the agency question, the Board also concluded that Laurel Baye had failed to establish that Lott and Cunningham were actual or apparent agents of Local 1996. The Board found that neither the threats by Lott and Cunningham, nor the anonymous threats to Brenda Walker and Robert White, rose "to the level of objectionable conduct because the Employer failed to show that the threats individually or cumulatively created a general atmosphere of fear and coercion." J.A. 518.

Having reviewed the record and the findings of the Board, we find it unnecessary to consider the import of Taylor's troublesome and at least facially contradictory assertions regarding the status of Lott and Cunningham, or the question of whether and under what circumstances Lott and Cunningham crossed over from being disgruntled former employees to union agents. Rather, we must uphold the Board's findings and conclusions because, even if Lott and Cunningham could be considered agents of Local 1996 based upon their pre-termination activities or the union's later ratification of their actions, the alleged coercive and threatening conduct relied upon by Laurel Baye is woefully insufficient to prove that "the free exchange of ideas on unionization among the employees" was stifled "so as to materially affect the election results."

<u>Kentucky Tennessee</u>, 295 F.3d at 445 (internal quotation marks and alteration omitted).[3]

As an initial premise, we note that the vast majority of the challenged conduct on the part of Lott and Cunningham consisted of relatively vague threats made against management officials in a single, five-minute telephone call placed within thirty minutes of disciplinary action being taken against them. No mention was made of the union or the upcoming election at the time, and the telephone call preceded the election by more than two months. Although there is evidence that Bell repeated the threat in an area where unit employees may have overheard it, there is no evidence that Lott or Cunningham repeated the threat against management to any unit employee or that they directed any threat to a unit employee. In short, the evidence reveals that the telephone call and the threats against management officials arose out of an entirely personal dispute between Lott and Cunningham, on the one hand, and management officials, on the other, resulting from adverse employment actions taken against Lott and Cunningham. And, there is no evidence that the threats impacted the election results, which the union won by a four-to-one margin.

---

[3]Although Laurel Baye relies upon all incidents in support of its invalidation claim, counsel for Laurel Baye agreed at oral argument that they cannot prevail under the third-party standard and, therefore, must establish that Cunningham and Lott were agents to set aside the election results.

The incident between Lott, Cunningham, and Earls was likewise isolated in nature and, given Earls' familial relationship to Lott, could easily be viewed as more personal in nature than related to the union. Indeed, there is no evidence as to whether Earls actually supported or opposed the union; rather, Cunningham and Lott were simply angry because Earls had brought breakfast to unnamed supervisors. We frankly do not construe the "with us or without us" comments as threatening either, but even viewed in their most damaging light, the sole evidence of comments directed at unit employees collectively amounts to little more than name-calling and innocuous posturing. More importantly, there is no evidence that Earls or any other unit employee abstained from voting or voted differently because of these incidents.

The additional incidents pointed to by Laurel Baye, even considered cumulatively with the telephone call, likewise fail to render invalidation of the election appropriate, as none rise to the level of threatening or coercive behavior sufficient to inhibit the electorate's fair and free choice at the election. The telephone calls to Walker and White, a management employee and outside contractor, respectively, were isolated incidents and anonymously made. There is no evidence that they were placed by Lott or Cunningham, or any other union official. Evidence of dissemination of these alleged "threats" was limited, and there is no evidence that any unit employee abstained from voting or voted

15

against unionization as a result. Similarly, although there is evidence that Cuffy quit her job after a union official visited her home, there is no evidence that her decision to quit was motivated by behavior that she viewed to be threatening.

For the foregoing reasons, we conclude that Laurel Baye failed to rebut the presumption that the election was valid and uphold the Board's rejection of Laurel Baye's challenge to the election in this proceeding.

III.

We turn briefly to consider Laurel Baye's claim that it may be justified in refusing to bargain with Local 1996 because, on August 1, 2005, after the Board certified Local 1996 as the exclusive bargaining representative for the unit, it disaffiliated from the AFL-CIO and joined with other local unions to form the organization "Change to Win." Laurel Baye contends that the Change to Win union is a materially different labor organization from the AFL-CIO and the Board erred in refusing to hold an evidentiary hearing to explore the issue of whether the current labor organization is the same organization approved by the electorate and certified by the Board in the underlying representation case.

The Board ruled that a hearing was unnecessary because Local 1996's disaffiliation from the AFL-CIO, without more, is insufficient to raise a genuine issue as to the continuity of the identity of the certified bargaining representative, see NLRB v.

16

Harris-Woodson Co., 179 F.2d 720, 722-23 (4th Cir. 1950) (noting that the employees' choice of a local union as their bargaining representative "was not affected by its change either of name or affiliation"); see also NLRB v. Wayerhaeuser Co., 276 F.2d 865, 873 (7th Cir. 1960) (holding that "[a] mere change of name or disaffiliation with the AFL-CIO is not sufficient" to raise doubts about the identity of a certified bargaining representative), and because, in any event, the disaffiliation came after Laurel Baye refused to bargain as ordered.

On appeal, Laurel Baye has pointed to no authority in support of its position, nor any argument beyond mere disaffiliation as the basis for its request. Accordingly, we find no error in the Board's rejection of Laurel Baye's request.

IV.

For the foregoing reasons, we deny Laurel Baye's petition for review and grant the Board's cross-application for enforcement.

> PETITION FOR REVIEW DENIED AND
> CROSS-APPLICATION FOR ENFORCEMENT
> GRANTED

17